**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ragheed AKRAWI, Defendant–Appellant.**

No. 90–1445.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1990.

Decided Dec. 14, 1990.

William J. Richards, Asst. U.S. Atty. (argued), U.S. Dept. of Justice, Detroit Strike Force, Detroit, Mich., for plaintiff-appellee.

James C. Howarth (argued), Detroit, Mich., for defendant-appellant.

Before KRUPANSKY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

The defendant, Ragheed Akrawi, entered a conditional guilty plea to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), after the district judge denied Mr. Akrawi's motion to suppress the handgun that was the subject of the count. Mr. Akrawi specifically claims that a protective sweep search that followed an in-home arrest of another person and revealed the handgun, was improper. Because of the specific circumstances of the agents' protective sweep, we hold that the search was indeed improper. Accordingly, we REVERSE the district court's decision and REMAND for proceedings consistent with this opinion.

I.

On March 1, 1989, Bureau of Alcohol, Tobacco and Firearms (ATF) agents together with agents of the Drug Enforcement Agency (DEA) obtained an arrest warrant for Tahrir S. Kalasho. The agents obtained no search warrant, however, for the premises where Mr. Kalasho might be found. Mr. Kalasho was the subject of a joint ATF and DEA investigation regarding his alleged involvement with the importation and distribution of cocaine in the Detroit area. According to the government, the defendant in this matter, Ragheed Akrawi, serves as a lieutenant in the alleged Kalasho cocaine organization. The government claims that the Kalasho organization distributes cocaine, collects funds, pays for

contract murders and has committed arson and bombings.[1]

Agents executed the warrant for Mr. Kalasho's arrest at 6099 Quaker Hill in West Bloomfield, Michigan. Fifteen to eighteen law enforcement officers, including those from the ATF, DEA, Immigration and Naturalization Service, and the Michigan State Police, approached 6099 Quaker Hill shortly before noon on March 1, 1989. Mr. Kalasho's mother owned the two story house at the address. The record is ambiguous as to how long the agents observed the house before approaching it. Agents' testimony implies, however, that agents conducted no surveillance except perhaps during the brief moments prior to entering the house.

Agents observed only one car parked in front of the house. The residence had a two car garage, but the agents did not determine whether vehicles were garaged there. Agents did not know who might be in the house other than Mr. Kalasho, his mother, Basima Kalasho, Mr. Akrawi and possibly Mr. Akrawi's girl friend, Ms. Smith.

Eight to ten agents stood at the door, three with their guns drawn, while an agent rang the doorbell. Mr. Kalasho opened the door and allowed the agents into the house with no resistance. Once inside the residence, agents found Mr. Akrawi and Mr. Kalasho's mother. Mr. Kalasho, his mother and Mr. Akrawi were unarmed. Agents handcuffed Mr. Kalasho and Mr. Akrawi, placed them in separate rooms, but formally arrested only Mr. Kalasho.

Mr. Kalasho's mother, who recently had lost one son in drug related violence, remained hysterical during her son's arrest. She made statements that she wished death upon the agents and their families and wished that the agents would experience the same pain that she had experienced. Mr. Akrawi allegedly made the statement that the next time that agents or police came through the door, he would meet

them with .223 caliber bullets that would pierce both sides of their bullet-proof vests. Neither Mr. Kalasho, Mr. Akrawi nor Mrs. Kalasho, however, made any immediate threats on the agents' lives.

Despite the fact that Mr. Kalasho immediately answered the door, was then arrested, and the agents had no warrant to search the house, the agents inexplicably remained in the house for forty-five minutes. Although one would expect a protective sweep immediately after the arrest, if at all, the record does not establish when during that period the sweep occurred. During this warrantless search, agents checked the rooms on the second floor to determine if anyone else might be in the house. The agents looked only in places where people might be hiding, such as closets. In one upstairs bedroom, two agents observed a 9mm Beretta pistol lying on top of a nightstand in plain view. The agents did not touch the pistol but questioned Mr. Akrawi regarding its ownership. Mr. Akrawi admitted owning the pistol. While agents lacked the knowledge at that time, agents subsequently learned that Mr. Akrawi was a convicted felon.

During an evidentiary hearing, the agents described their search as a protective sweep conducted only for the protection of the agents. The agents testified that the search was made to insure that no one else was in the house. The agents also testified that they knew that several members of the alleged Kalasho organization had used the address in the past. No noises or voices indicated, however, that anyone was on the second floor. The agents could not articulate any specific reason that they believed someone of danger to the agents was in the house at that time.

On April 28, 1989, federal agents returned to 6099 Quaker Hill with warrants for the seizure of items for federal forfeiture. The agents seized the same 9mm Beretta pistol that Mr. Akrawi had admitted owning during the arrest of Mr. Kalasho. Subsequently, agents arrested Mr.

---

1. The government noted in its brief that the Kalasho organization consists of both the Kalasho and Akrawi families. Both families consist of Iraqi nationals of Chaldean descent. A Chaldean is an Iraqi citizen of the Catholic faith, a religious minority in mostly Moslem Iraq.

Akrawi at his parents' home in Detroit pursuant to a three count indictment. Count one of the indictment of Mr. Akrawi specifically charged him as a felon in possession of a firearm, the 9mm Beretta pistol.

Mr. Akrawi challenged the agents' protective sweep as a violation of the fourth amendment. The district judge ruled, however, that the search did not violate the fourth amendment because the agents' information on Mr. Kalasho and Mr. Akrawi indicated that they were involved in narcotics and were in possession of weapons. Mr. Akrawi subsequently entered a conditional guilty plea to being a felon in possession of the 9mm Beretta pistol. Mr. Akrawi now appeals, relying on the alleged impropriety of the agents' protective sweep.

## II.

The sole issue on appeal is whether the agents' protective sweep that revealed the pistol was proper. The Supreme Court recently considered whether the fourth amendment permits properly limited protective sweeps by law enforcement officers in conjunction with in-home arrests in *Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 1095, 108 L.Ed.2d 276 (1990). The Court specifically considered in *Buie* a protective sweep search during the in-home arrest of a robbery suspect, Jerome Buie. *Id.* While searching for Buie in his house, the arresting officer yelled down the basement steps calling for anyone hiding to emerge. *Id.* Buie emerged and the officer placed him under arrest. *Id.* Another officer descended into the basement to determine if anyone else was hiding there. *Id.* In the basement, the officer seized a red jogging suit that served as key evidence at trial to convict Buie after the trial judge denied his motion to suppress. *Id.* The Maryland Court of Appeals upheld the trial court's denial of Buie's motion to suppress and Buie appealed to the United States Supreme Court. *Id.*

Regarding the officer's protective sweep of the basement in *Buie,* the Supreme Court held that "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at ——, 110 S.Ct. at 1098. The *Buie* Court emphasized, however, that the protective sweep must be aimed at protecting the officers and must extend only to a cursory inspection of places where a person may hide. *Id.* at ——, 110 S.Ct. at 1099. The Court required "that the sweep last[ ] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* Accordingly, the Court remanded the case to the Maryland Court of Appeals. *Id. See also United States v. Hatcher,* 680 F.2d 438, 444 (6th Cir.1982) (holding that there must be some basis for a reasonable belief that dangerous persons are on the premises to justify a protective sweep).

Under the specific facts in the case before us on appeal, the agents' protective sweep that revealed the 9mm Beretta pistol was improper under the Supreme Court's standard in *Buie, supra.* The searching officers articulated no specific basis for believing that the second floor of the 6099 Quaker Hill residence harbored any individual posing a threat to the agents. Some fifteen to eighteen law enforcement agents entered the residence, some with weapons drawn. The agents encountered no resistance upon entering the house and had no difficulty in arresting Mr. Kalasho. Mr. Akrawi was handcuffed during Mr. Kalasho's arrest. Despite the threats of future harm to the agents, Mrs. Kalasho and Mr. Akrawi made no immediate threats. The agents heard no noises or voices that indicated anyone might have been in hiding on the second floor.

Moreover, the agents remained in the house forty-five minutes. The record gives no indication of how long the protective sweep took, nor does it indicate at what point during their forty-five minute stay the agents made the sweep. Thus the record does not support a causal relation

between the sweep and the agents' claimed necessity to protect themselves while making the arrest and removing the prisoner from the house. The burden of proving the legitimacy of a warrantless search is on the government. *See United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951); *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir.1976). Because the government failed to establish these facts, we will not presume that the sweep was short and that it occurred immediately after arresting Mr. Kalasho. If the agents were concerned about safety, it seems unlikely that they would have lingered in the house for forty-five minutes after confronting Mr. Kalasho at the front door with no resistance. Consequently, under the circumstances of this particular protective sweep, we conclude that the search was improper.

The Eleventh Circuit recently applied the standard set forth in *Buie* to determine the legitimacy of a protective sweep search by federal agents. In *United States v. Delgado*, 903 F.2d 1495 (11th Cir.1990), the court considered the propriety of a protective sweep of a warehouse pursuant to the arrest of several drug suspects. The *Delgado* court noted that as the agents arrested several suspects outside the warehouse, the agents actually witnessed someone run into the warehouse. *Id.* at 1501. The court also noted that the protective sweep of the warehouse lasted only three to five minutes. *Id.* at 1502. Because the agents had reason to believe that the warehouse harbored an individual who could pose a danger to the agents outside, and because the sweep was short, lasting no longer than necessary, the court upheld the sweep as proper. *Id. See also United States v. McConnell*, 903 F.2d 566, 570 (8th Cir.1990) (upholding police officer's sweep of hotel room to insure safety of himself and the public).

The facts and circumstances in the case before us are obviously quite different than those in *Delgado, supra.* As previously noted, the agents could point to no particular reason to support a reasonable belief that the second floor harbored a dangerous individual. Furthermore, the government

has failed to show that the sweep was quick, and occurred at the time of or promptly after the arrest. Thus, our decision here is consistent with that of the Eleventh Circuit in *Delgado*.

While this court certainly recognizes the dangers faced by law enforcement officials in executing arrest warrants, the constitutional rights of all must be respected and maintained. Obviously in many circumstances, such a protective sweep will be essential to the protection of law enforcement officers. Under the very specific circumstances presented here, however, the protective sweep search that uncovered the 9mm pistol was not shown to be warranted. Accordingly, we REVERSE the district court and REMAND for proceedings consistent with this opinion.