951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ragheed AKRAWI, Defendant-Appellant.
 No. 90-2225.
 United States Court of Appeals, Sixth Circuit.
 Jan. 2, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Ragheed ("Ray") Akrawi appeals his jury conviction on two counts of structuring a transaction to evade currency transaction reporting requirements, 31 U.S.C. § 5324(c), and one count of conspiracy, 18 U.S.C. § 371. Akrawi raises seven issues on appeal:
 
 
 2
 1. Did the district court abuse its discretion by refusing to dismiss the indictment due to error in the grand jury testimony of case agents;
 
 
 3
 2. Did sufficient evidence support the jury's verdict;
 
 
 4
 3. Did the district court err in admitting the tax information of Akrawi;
 
 
 5
 4. Did the district court err by not excluding a juror who read a newspaper article reporting that a relative of Akrawi was being prosecuted for distributing cocaine;
 
 
 6
 5. Did the district court err in admitting the out-of-court statements made by Akrawi's codefendants;
 
 
 7
 6. Did the district court abuse its discretion by not permitting Akrawi's trial counsel to withdraw;
 
 
 8
 7. Did the district court err in sentencing Akrawi based on a prior reversed conviction?
 
 I.
 
 9
 This case involves three defendants: Ragheed Akrawi, Ragheed's sister Lamia Akrawi Jeberaeel,[1] and Ragheed's girlfriend Janet Maude Smith. Between February 1987 and August 1988, the defendants acquired five vehicles from European Auto Service ("European") in Ferndale, Michigan. The salesman for the first purchase was Dragutin Pernik, European's owner, and the salesman for the other four purchases was Floyd Black, European's sales manager. Both men testified at trial. In each purchase, Ragheed would specify the car he wanted, negotiate the price, and then direct European to title the car in the name of his sister or his girlfriend. The facts of each purchase are as follows:
 
 
 10
 1. February 1987 purchase of 1987 Mercedes-Benz 190 E: Price--$40,200; name on title--Lamia Akrawi; method of payment--cash, paid by Ragheed.
 
 
 11
 2. September 1987 purchase of 1987 Corvette: Price--$32,800; name on title--Janet Smith; method of payment--paid in full at time of sale by Ragheed and Janet Smith.
 
 
 12
 3. December 1987 purchase of 1988 Bronco: Price--$20,300; name on title--Janet Smith; method of payment--$9000 cash or check down payment; remainder financed.
 
 
 13
 4. April 1988 purchase of 1988 Mercedes-Benz 560 SL: Price--$62,800; name on title--Janet Smith; method of payment--one deposit payment of $9000 in cash received from Ragheed, and eight cashier's checks, each between $4000 and $9000, received from either Janet Smith or Ragheed.
 
 
 14
 5. July 1988 purchase of 1988 Mercedes-Benz 560 SEC: Price--$70,600; name on title--Lamia Akrawi; method of payment--one deposit payment of $9000 in cash received from Lamia and eight cashier's checks, each between $4000 and $9000, received from either Janet Smith or Ragheed.
 
 
 15
 Purchases 4 and 5, the two 1988 Mercedes, were the basis of the structuring indictment. Ragheed Akrawi's date of birth is August 21, 1968; therefore, during the time of the purchases, he was 19-20 years old.
 
 
 16
 From 1985-88, none of the three defendants reported an income exceeding $6200, with the exception of Lamia Akrawi Jeberaeel in 1988.[2] The parties stipulated that if Janet Smith's parents testified, they would state that she lived with them from 1987-88, that she never discussed the three cars titled in her name (the Corvette, the Bronco, and the Mercedes 560 SEC), and that they did not know how she could have paid for them.
 
 
 17
 In April 1990, a grand jury returned an initial indictment against the three defendants. In July 1990, a different grand jury filed a superseding indictment against the defendants:
 
 
 18
 --Counts 1 and 2 charged Ragheed Akrawi, Janet Smith, and Lamia Akrawi Jeberaeel with structuring transactions to evade reporting requirement, 31 U.S.C. § 5324(c). Count 1 was based on the purchase of the 1988 Mercedes 560 SL; count 2 was based on the purchase of the 1988 Mercedes 560 SEC.
 
 
 19
 --Counts 3-7 charged Smith with mail fraud, 18 U.S.C. § 1341, resulting from her false representation of residence on insurance policies for the cars.
 
 
 20
 --Count 8 charged Ragheed Akrawi, Smith, and Lamia Akrawi Jeberaeel with conspiracy, 18 U.S.C. § 371. The objects of the conspiracy were 1) to conceal actual owner of the five cars to conceal Ragheed Akrawi's income and evade payment of taxes, and 2) to evade the currency transacting reporting requirements.
 
 
 21
 In August 1990, a jury heard the case and found Smith and Ragheed Akrawi guilty on counts 1, 2, and 8; Smith not guilty on counts 3-7; and Lamia Akrawi Jeberaeel not guilty on counts 1, 2, and 8.
 
 
 22
 Ragheed Akrawi was sentenced to 57 months imprisonment on each count, the terms of incarceration to run concurrently.
 
 
 23
 Ragheed Akrawi appeals.
 
 II.
 A.
 Denial of Motion to Dismiss Indictment
 
 24
 Akrawi argues that the testimony of a government witness before the first grand jury contained several errors of fact which constituted grand jury misconduct. Akrawi contends that the superseding indictment which was returned by a new grand jury should be dismissed, based on the misconduct before the first grand jury.
 
 
 25
 Akrawi bases his argument on the testimony given by IRS Special Agent Roger Simmons before the first grand jury in April 1990. Agent Simmons was one of two IRS agents investigating the defendants. Simmons focused on the structuring violations, and the other agent focused on the insurance fraud. Simmons testified before the first grand jury that
 
 
 26
 Charley [Dragutin] Pernak [sic] and Floyd Black, who is the sales manger, both of them said that they knew that it was Ragheed that was buying the cars, even though the cars were put in somebody else's name.
 
 
 27
 ....
 
 
 28
 I have actually got written affidavits from both individuals stating that.
 
 
 29
 During trial, Simmons admitted that this testimony was in error because neither Pernik nor Black actually stated that Ragheed was the purchaser. Rather, their affidavits stated that Ragheed "negotiated" the purchases.
 
 
 30
 "The standard of review of a district court's refusal to dismiss an indictment is whether there was an abuse of discretion." United States v. Overmyer, 899 F.2d 457, 465 (6th Cir.), cert. denied, 111 S.Ct. 344 (1990). "Because of the well-accepted principle that grand jury indictments are presumed valid, we exercise extreme caution in dismissing an indictment for alleged grand jury misconduct." Id.
 
 
 31
 The government argues that Akrawi's attacks on the proceedings of the April 1990 grand jury are irrelevant because he was tried on charges in a superseding indictment returned by a different grand jury in July 1990. Because the proceedings before the second grand jury were not transcribed, the content of Agent Simmons' testimony before the second grand jury is unknown. The government asserts that Simmons did not repeat the statement Akrawi now challenges. During oral argument before this court, the government stated, without objection from counsel for Akrawi, that prior to trial, Akrawi did not request a copy of the minutes of the second grand jury testimony.
 
 
 32
 The government cites United States v. Battista, 646 F.2d 237 (6th Cir.), cert. denied, 454 U.S. 1046 (1981), in which the court noted that the "attack on the 1974 indictment would seem to be irrelevant and misplaced because it was supplanted by a superseding indictment in 1975...." Id. at 241. The court, however, did not rely on this point when it rejected a challenge to the superseding indictment.
 
 
 33
 This court holds that Akrawi's attack on the first indictment is irrelevant to the validity of the superseding indictment. Akrawi essentially asks this court to dismiss the superseding indictment without any knowledge of the proceedings before the July 1990 grand jury. We conclude that the district court properly refused to dismiss the superseding indictment.
 
 B.
 Sufficiency of the Evidence
 
 34
 Akrawi argues that no evidence showed that he purchased the cashier's checks used to pay for the two 1988 Mercedes, and that there was insufficient evidence to prove that he owned the cars.
 
 
 35
 In an argument claiming that the jury's verdict is not supported by sufficient evidence, "the relevant question is, after viewing the evidence in the light most favorable to the prosecution, [whether] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991) (emphasis in original) (citations omitted).
 
 
 36
 Title 31, section 5313 establishes currency reporting requirements for U.S. financial institutions. It provides:
 
 
 37
 When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.
 
 
 38
 Pursuant to this section, the Secretary of the Treasury established 31 C.F.R. § 103.22(a)(1), which requires:
 
 
 39
 Each financial institution other than a casino or the Postal Service shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000.
 
 
 40
 The indictment charged Ragheed Akrawi and his codefendants with two counts of violating 31 U.S.C. § 5324, which provides:
 
 
 41
 No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction--
 
 
 42
 ....
 
 
 43
 (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
 
 
 44
 To convict a defendant under this section, the prosecution must prove that the defendants intentionally structured the transaction to evade the reporting requirement.
 
 
 45
 The district court's instructions required the jury to find the following four elements: 1) that the defendant knew of a financial institution's duty to file a currency transaction report (CTR), 2) with this knowledge, the defendants knowingly structured or assisted in structuring a transaction, 3) that the purpose of the transaction was to evade the reporting requirements, and 4) that the structured transactions involved one or more domestic financial institutions.
 
 
 46
 Akrawi argues that no evidence proved that he actually entered a bank and purchased a cashier's check. While that is true, section 5324(3) also makes it a crime to assist in structuring a transaction. Therefore, we must examine the record to determine whether there is evidence sufficient to prove that Akrawi assisted in structuring the transaction.
 
 
 47
 Initially, we note that the circumstances surrounding the purchases of all five cars provide a basis from which the jury could infer that Ragheed Akrawi was the real owner of the cars; an inference which, alone, supports the conclusion that he assisted in structuring the transactions. However, with regard to the purchases of the two 1988 Mercedes, there is other evidence which supports the jury's conclusion that Akrawi assisted in structuring the transaction. First, European salesman Black testified at trial that Akrawi requested the specific Mercedes color and model he wanted and then negotiated the purchase price of each car. Black testified that when Akrawi asked for a particular model, Black told him that "we could sell the car to him." Second, as to the 1988 Mercedes SL, a receipt admitted into evidence showed that $9000 cash was received from "Ray" as a deposit on the car. Third, although Black could not recall at trial if Akrawi brought him the cashier's checks for the cars, he stated in a previous affidavit that both Akrawi and his girlfriend brought in the cashier's checks.
 
 
 48
 We conclude that the evidence supported the jury's verdict that Ragheed Akrawi assisted in structuring the purchases to evade the reporting requirement.
 
 C.
 Admission of Tax Information
 
 49
 Akrawi argues that the district court erred when it admitted proof that Akrawi failed to file income tax returns in 1985 and 1988 because Akrawi had not been charged with the crime of failing to report income tax. The government's evidence was two documents from the IRS which stated simply that for the tax years ending December 1985 and 1988, there was no record of returns filed for Ragheed Akrawi.
 
 
 50
 The standard of review that applies to a district court's decision to admit or reject evidence has two components: findings of fact will be upheld unless clearly erroneous, and conclusions of law are reviewed de novo. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991).
 
 
 51
 Federal Rule of Evidence 402 establishes that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, [or] by these rules." Rule 404(b) provides:
 
 
 52
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of person in order to action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident.
 
 
 53
 Akrawi asserts that the evidence of his failure to pay taxes was not relevant. His assertion is unsupported and meritless. He also argues that admission of the tax data was prejudicial and not within Rule 404(b).
 
 
 54
 We disagree with Akrawi and hold that the tax information was admissible under Rule 404(b). The government's case rested heavily on proving that Akrawi provided the funds for the cars and was the true owner. The fact that the cars were titled to other people indicates that Akrawi did not own the cars. To counter this implication, the government suggested a motive why Akrawi would purchase cars and put them in someone else's name, especially since there can be legitimate reasons why a person would buy a car and then title it to another person. The tax data provided proof of an illegitimate motive for Akrawi's conduct. By proving that Akrawi reported very little income, the government supported an inference that Akrawi wanted to avoid IRS scrutiny arising from his ownership of several expensive automobiles while reporting very little income prior thereto. Therefore, the tax information was admissible under Rule 404(b) to prove motive.
 
 D.
 Lack of Juror Exclusion
 
 55
 Akrawi argues that the district court erred when it permitted a juror to be seated who recalled reading an article that linked the name Akrawi to a drug ring.
 
 
 56
 During the trial, the trial judge asked the jurors whether any member had read about the case in the newspaper. Juror No. 14 replied: "Not this particular case." The court then questioned the juror further outside the presence of the other jurors. The juror stated that she had read an article in a local newspaper concerning a person named Akrawi.[3] The juror recalled that article was about a person "I am assuming it's probably the father of these two children," that such person "is in jail on a multi-million dollar bond, that this is the largest drug ring." She stated that she remembered the names Akrawi and Kalasho from the article, and that "[t]he Akrawi started with an L."
 
 
 57
 The court asked the juror if anything she read would affect her ability to be fair and impartial, and the juror replied "Not at all." The following exchange then occurred with the court:
 
 
 58
 JUROR NO. 14: You know, things that have come up during this trial, you now, I already, you know--
 
 
 59
 THE COURT: What things have come up?
 
 
 60
 JUROR NO. 14: Well, beepers, you know, things like that. You can make assumptions which you don't know are facts.
 
 
 61
 THE COURT: Well, you understand the charge here is--
 
 
 62
 JUROR NO. 14: This has nothing to do with it.
 
 
 63
 THE COURT: --with the money?
 
 
 64
 JUROR NO. 14: I understand this has nothing to do with it.
 
 
 65
 ....
 
 
 66
 THE COURT: Do you feel anything you have read would affect your ability to sit as a fair juror?
 
 
 67
 JUROR NO. 14: No, not at all.
 
 
 68
 In response to a question from defense counsel regarding whether she could separate the information in the article from the information at the trial, the juror replied: "I believe I can." Later, the following exchange occurred with defense counsel:
 
 
 69
 [Defense counsel:] Was there any other assumptions that you made from the case other than the fact that the beeper was mentioned?
 
 
 70
 JUROR NO. 14: Just that no one has told me where all this money has come from.
 
 
 71
 The court was then informed that Sabah Akrawi, the actual father of Ragheed and Lamia, would testify later that day; thus, Juror No. 14 would soon discover that the Akrawi she read about was not the father of Ragheed and Lamia.
 
 
 72
 This court will reverse a trial court's decision regarding a juror's impartiality only if the defendant shows manifest error. United States v. Smith, 748 F.2d 1091, 1094 (6th Cir.1984).
 
 
 73
 Akrawi attacks the trial court's decision to retain the juror, arguing that although the juror said she would be impartial, that is not sufficient to prove impartiality in light of the Supreme Court's holding in Murphy v. Florida, 421 U.S. 794 (1975). The Court held, in that case, that a juror's assurances that she would be impartial is not dispositive of the issue, and that the defendant may still demonstrate the existence of partiality. Id. at 800. The Court noted that indicia of impartiality might be disregarded in a case where the general atmosphere in the community or courtroom is sufficiently inflammatory, but the circumstances surrounding petitioner's trial are not at all of that variety.
 
 
 74
 Id. at 802. In this case, the general community and courtroom atmosphere was not inflammatory. There was not extensive press of the case, and the only juror who had read anything about a person named Akrawi was juror No. 14.
 
 
 75
 Akrawi also argues that the juror "equivocated" in answering questions about her impartiality. In response to the court's questions whether the article would influence her decision, she replied "Not at all." In response to defense counsel's question about the juror's ability to separate the information in the article from her jury deliberations, she replied "I believe I can." This slight difference is not meaningful. In Patton v. Yount, 467 U.S. 1025, 1039 (1984), the Court held:
 
 
 76
 Jurors thus cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially.
 
 
 77
 It was within the trial court's discretion to determine whether juror No. 14's answers were sufficiently definite to persuade the court of her impartiality.
 
 
 78
 We conclude that Akrawi has not shown that the trial court committed manifest error in not excluding the juror.
 
 E.
 Admissibility of Co-Conspirator Statements
 
 79
 Akrawi argues that the district court erred by admitting the statements of Akrawi's co-conspirators without making a "refined assessment" that a conspiracy existed.
 
 
 80
 Akrawi claims the following statements are hearsay and should not have been admitted:
 
 
 81
 --Farmer's Insurance agent Mary Lou Daniels testified about statements made to her by Smith in 1987-88.
 
 
 82
 --AAA Auto insurance investigator Gregory Bleske testified about statements made to him by Lamia Akrawi Jeberaeel in October 1987.
 
 
 83
 --Four instances of prior recorded deposition testimony:
 
 
 84
 1) by Smith in November 1989.
 
 
 85
 2) by Lamia Akrawi Jeberaeel on January 13, 1988.
 
 
 86
 3) by Lamia Akrawi Jeberaeel on January 12, 1990.
 
 
 87
 4) by Lamia Akrawi Jeberaeel in March 1990.
 
 
 88
 Neither Akrawi nor the other two defendants objected to the admission of any of the statements at trial, except the testimony of insurance agent Daniels. As to the Daniels testimony, the objection asserted was that the statement was hearsay. The trial judge overruled the objection, stating that Smith's testimony was hearsay only if was offered for the truth of the matter asserted and that, in all events, it was admissible against Smith as an admission.
 
 
 89
 Evidentiary rulings to which no objection is registered at trial are not preserved for review. Fed.R.Evid. 103(a) provides:
 
 
 90
 Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected and
 
 
 91
 (1) Objection. In the case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection....
 
 
 92
 The exception to this rule is plain error. Fed.R.Evid. 103(d). As this court has held, "when a party fails to object to evidence at the trial court, his contention on appeal will prevail only if the trial court's evidentiary decision was plainly erroneous...." United States v. Evans, 883 F.2d 496, 499 (6th Cir.1989).
 
 
 93
 Akrawi does not allege that the admission of the statements to which he now objects was plain error. Consequently, we shall address only the matter of Daniels' trial testimony.
 
 
 94
 The testimony of insurance agent Daniels consisted, in part, of statements Janet Maude Smith made to Daniels on the subject of insurance coverage for some of the cars. It appears that none of the statements were offered for their truth, but rather to prove, circumstantially, Smith's participation in the conspiracy. Because the statements were not offered for their truth, they are not inadmissible hearsay under Fed.R.Evid. 801(c).
 
 
 95
 We hold that the trial court did not err in admitting the testimony of Mary Lou Daniels.
 
 F.
 
 96
 Denial of Trial Counsel's Motions to Withdraw
 
 
 97
 Akrawi argues that the district court erred when it denied the motions of Akrawi's trial counsel to withdraw. One motion was made prior to trial, and the second was made prior to sentencing.
 
 
 98
 Akrawi alleges that counsel's continued representation of him after the denial of the motions to withdraw infringed on Akrawi's right to effective assistance of counsel because trial counsel effectively had a conflict of interest due to Akrawi's failure to pay him his fee.
 
 
 99
 In April 1990, Akrawi signed a retainer agreement with counsel. In June 1990, Akrawi told trial counsel that he would not pay him. Trial counsel then moved to withdraw. The district court conditionally granted the motion to withdraw: "The order shall specify [that] it is granted if you can produce another attorney who will undertake the representation at the dates already scheduled." As an alternative, the district court gave trial counsel the opportunity to move to be appointed as counsel under the Criminal Justice Act, upon a showing of indigency. Despite the very clear guidance from the trial court, Akrawi's trial counsel did neither, and proceeded to trial.
 
 
 100
 The decision of the trial court regarding a motion to withdraw, like a decision regarding a motion to substitute counsel, is reviewed under the abuse of discretion standard. Cf. Wilson v. Mintzes, 761 F.2d 275, 281 (6th Cir.1985).
 
 
 101
 Local Rule 14 of the United States District Court for the Eastern District of Michigan reads as follows:
 
 
 102
 (b) Withdrawal of Appearances
 
 
 103
 Withdrawal of appearances may be accomplished by leave of Court on motion of counsel.
 
 
 104
 (c) Appearances in Criminal Cases
 
 
 105
 Except as permitted by the Court, counsel making any post-indictment appearance in a criminal case shall be treated as an attorney of record until relieved of such responsibilities by the Court.
 
 
 106
 The motion of Akrawi's trial counsel was proper under this rule. The district court conditionally granted the motion; however, Akrawi did not produce any other counsel, and he did not file for indigency. We hold that the district court did not abuse its discretion in conditioning its grant of the motion upon Akrawi procuring substitute counsel.
 
 
 107
 Akrawi also argues that the trial court erred by rejecting the motion of his trial counsel to withdraw during the sentencing phase. The sentencing hearing was on October 29, 1990. At that time, trial counsel renewed his motion to withdraw. The record reveals that trial counsel stated: "My client has agreed that I represent him at the time of the sentence. I think he will make out a prima facie case of indigency if an affidavit is submitted to him." Once again, Akrawi failed to file an affidavit proving indigency.
 
 
 108
 Akrawi has not shown how denial of the second motion infringed on his right to effective assistance of counsel. Again, there is no proof in the record that Akrawi was dissatisfied with the performance of trial counsel. Therefore, we hold that the district court did not abuse its discretion in denying trial counsel's second motion to withdraw.
 
 G.
 Sentencing Error
 
 109
 Akrawi argues that his sentence was based, in part, on a conviction that was reversed on appeal after the trial court had completed sentencing in this case.
 
 
 110
 In 1989, Akrawi was named in a multi-count indictment, one count of which charged him as a felon in possession of a weapon. In early 1990, Akrawi entered a conditional guilty plea to that charge after the district court denied his motion to suppress the weapon on which the charge was based. In March 1990 he was sentenced on the weapons charge. In October 1990, he was sentenced in the present case. In December 1990, this court reversed the earlier conviction on the ground that the weapon had been illegally seized. United States v. Akrawi, 920 F.2d 418 (6th Cir.1990).
 
 
 111
 The government does not dispute Akrawi's claim that the reversed conviction should not have been considered during the sentencing in the present case. We agree, and remand to the trial court for resentencing. That being so, we do not address the additional sentencing issues Akrawi raises.
 
 III.
 
 112
 Ragheed Akrawi's convictions on all counts are AFFIRMED; however, the sentence is VACATED and the case REMANDED to the district court for resentencing. At resentencing, the district court shall not consider the prior reversed conviction.
 
 
 
 *
 The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 In 1987, Lamia Akrawi married Majid Sadik and adopted the new surname of Jeberaeel, with Akrawi becoming her middle name
 
 
 [2]
 In 1988, Lamia and her husband filed a joint return reporting an income of $11,000
 
 
 [3]
 The subject of the article was the preliminary hearings in the prosecution of Louis Akrawi, an uncle of Ragheed and Lamia