UNITED STATES of America, Plaintiff,

v.

Roger W. SCHULTZ, Defendant.

No. 93–Cr–29.

United States District Court,
E.D. Wisconsin.

March 19, 1993.

Motion and Order for Dismissal
April 6, 1993.

Joseph R. Wall, Asst. U.S. Atty., Office of U.S. Atty., E.D. Wisconsin, Milwaukee, WI, for plaintiff.

Michael Meurer, Elkhorn, WI, for defendant.

### MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE THOMAS J. CURRAN

BITTNER, United States Magistrate Judge.

### NATURE OF CASE

On January 22, 1993 a federal grand jury sitting in this District returned a one (1) count indictment against defendant Roger W. Schultz charging him with violating 26 U.S.C. § 5861(d) and § 5871, by knowingly and wilfully possessing a firearm which was not registered to him in the National Firearms Registration and Transfer Record as required by law. The defendant appeared be-

fore this Court for arraignment on February 19, 1993, entering a plea of not guilty. Pursuant to the pretrial scheduling order, the defendant filed a motion to suppress which will addressed herein.

## MOTION TO SUPPRESS

The defendant moves the Court for issuance of an order suppressing evidence seized on December 3, 1992 by law enforcement officers executing a state search warrant for his home in the unincorporated town of Linton, township of Linn, with a mailing address of Route 1, Box 431, Highway BB, Lake Geneva, Wisconsin. As grounds for this motion, the defendant contends such evidence is subject to suppression because the search warrant was based solely upon a prior illegal search of his home made by law enforcement officers earlier that day, when they executed a federal warrant for his arrest on two (2) charges of obstruction of justice, in violation of 18 U.S.C. § 1503 which were a part of a marijuana distribution conspiracy indictment against a total of seven (7) defendants in Case No. 92–Cr–228 (E.D.Wis.). The defendant contends his Fourth Amendment rights were violated because the search conducted by law enforcement officers at the time of his arrest exceeded the permissible scope of a search incident to an arrest, was not conducted pursuant to his consent or that of his wife, and does not fall within the plain view exception to the search warrant requirement. The government asserts the evidence was legally discovered during a constitutionally permissible protective sweep of the defendant's home, when he was being arrested.

An evidentiary hearing was conducted by the Court on March 11, 1993, at which time Walworth County Sheriff's Department Deputy Sergeant Thomas Allen Hausner (hereinafter referred to as Hausner) and City of Delavan Police Department law enforcement officer Detective Roy A. Ostermann testified on behalf of the government. The defendant and his wife, Stacy Wagner–Schultz, testified on his behalf. In addition to the evidence adduced at the hearing, the parties stipulated to certain uncontested facts. Based on the foregoing, this Court now makes its proposed findings of fact and conclusions of law.

## Findings of Fact

On December 3, 1992 a team of state and federal law enforcement officers, all of whom were required to wear body armor, assembled for the purpose of executing a series of four (4) or five (5) arrest warrants, issued in conjunction with a marijuana trafficking conspiracy indictment. Deputy Hausner knew that two (2) of the subjects of the arrest warrants in two (2) other residences had guns, based on his recent prior experiences with those individuals. He had known defendant Schultz since high school, had no information indicating whether defendant Schultz possessed a firearm, and knew defendant Schultz had only been charged in the marijuana conspiracy indictment with obstructing justice, because he had alerted two (2) of the defendants in that case that they were the subject of a grand jury investigation for marijuana trafficking—defendant Schultz was not implicated in the drug charges themselves.

Law enforcement officers, including Hausner, assigned to execute the arrest warrant for defendant Roger Schultz waited outside the defendant's apartment until sometime between 6:30 and 7:00 a.m. when lights were turned on inside the apartment, indicating the occupants were awake and up and about. The officers knew the defendant and his wife lived in the apartment, but they did not know whether there were any other occupants. (However, upon entering the apartment, they were told by both the defendant and his wife that no other persons were on the premises.) After Hausner knocked on the front door multiple times, the defendant was awakened and answered the door. Hausner identified himself as a law enforcement officer and indicated they had a warrant for the defendant's arrest. The defendant allowed Hausner and the other law enforcement officers to enter through the front door, which opened directly into the kitchen. The defendant, who was cooperative, was quickly handcuffed and patted down in the kitchen. Shortly thereafter, the defendant's wife, Stacy Schultz, emerged from the bathroom, having completed her morning shower. She was patted down and voluntarily remained in the

kitchen with the defendant, together with several law enforcement officers.

Meanwhile, immediately upon entering the apartment, pursuant to Walworth County Sheriff's Department's standard procedure for the execution of arrest warrants, Hausner conducted a brief protective sweep, looking for other persons who might pose a danger to law enforcement officers. Going from left to right, he walked from the kitchen through the living room and into the bedroom, where he looked under the bed, behind the doors, and stepped into a 3′ × 10′ walk-in closet. During his walk through, Hausner did not open any drawers or move or upset any furniture. Upon looking into the walk-in closet, Hausner observed in plain view on a shelf in the closet a red "bong" (an 18–24″ tall glass-like cylinder with a smaller tube in the side used for smoking marihuana). Although Hausner observed the bong, he did not touch or remove it. Then he called out "clear" to indicate to his fellow law enforcement officers there were no other persons on the premises and stated "we have a bong here." As he walked back through the living room he noticed on the edge of a coffee table a "poker" (a metal wire loop approximately 18″ long having multiple uses as a piece of marihuana smoking paraphernalia). Hausner picked up the poker, sniffed it, determined it smelled like marihuana, and then put the poker back on the table. Thirty (30) seconds transpired between the time Hausner entered the apartment and completed his protective sweep, which ended at the walk-in closet. Another thirty (30) seconds elapsed before Hausner found the poker.

Stacy Schultz testified she did not observe law enforcement officers moving anything or going through any containers during the protective sweep, but she thought she heard sounds of containers being opened and that the whole process seemed to take a long time—longer than thirty (30) seconds. However, she also testified the amount of time elapsed could have been an erroneous perception on her part. She further testified that, in any event, only ten (10) to fifteen (15) minutes elapsed between the time officers knocked on the door and left with defendant Schultz in custody.

Defendant Schultz testified, consistent with the testimony of Hausner, that the pro-

tective sweep lasted approximately thirty (30) seconds. He further testified that, thereafter, Hausner did not move or disturb other objects, but another officer moved containers on top of the china cabinet, which caused defendant Schultz to inquire whether the officer had a search warrant which the officer conceded he did not. The defendant and his wife both refused to consent to a search of the premises.

The defendant and his wife disputed Hausner's description of where he found the bong and poker. They both testified that defendant Schultz had received a telephone call from the City of Delavan Police Department at approximately 11:00 a.m. on the preceding day in which the defendant was asked directions to his residence because an officer might stop by "shortly" to see him. Defendant Schultz further testified that, after receiving the call, he "stowed" the poker beneath the stereo receiver located on a shelf in the living room thereby precluding its casual observation and that he placed the bong in a box on the shelf in the walk-in closet beneath a pile of belts and behind numerous objects, such as old sporting trophies. He also testified he had not removed either the bong or the poker from their hiding places prior to the entry of law enforcement officers on December 3, 1992.

### Analysis

■ "A police officer with an arrest warrant can enter the suspect's residence to execute the warrant if there is reason to believe he will be found there; the officer does not need a search warrant." *United States v. Pallais,* 921 F.2d 684, 690 (7th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 134, 116 L.Ed.2d 101 (1991) (citing *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980)). After making a valid custodial arrest, the police may conduct a warrantless search of the suspect without probable cause or reasonable articulable suspicion to believe the suspect possesses either weapons or evidence. *New York v. Belton,* 453 U.S. 454, 461, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The scope of the search is not limited to the suspect's person; the police may also search

the area within his or her immediate control. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). However, police may not conduct a full-blown search of the entire house under the search incident to arrest exception. *See Chimel v. California,* 395 U.S. at 763, 89 S.Ct. at 2040. The Supreme Court has, however, held that officers may conduct a limited protective sweep of an arrestee's home, following an in-home arrest, if they have "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie,* 494 U.S. 325, 337, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990). *See United States v. Richards,* 937 F.2d 1287, 1294 (7th Cir.1991) (applying protective sweep doctrine to entry to effect a warrantless arrest where officer knew defendant was seen with murder suspect, defendant opened the door to his apartment while pointing gun at an officer, officer observed cocaine immediately upon his entry to apartment, defendant twice failed to answer officer's question about whether any one else was in apartment, and apartment was located in a dangerous neighborhood); *see also, United States v. Daoust,* 916 F.2d 757, 758 (1st Cir.1990) (reasonable suspicion for protective sweep existed because officers were searching house at 7:00 a.m. when suspect may have been at home sleeping and they knew suspect had a prior criminal history of violent behavior, owned a handgun which he kept in a rather unusual place in the kitchen, and lived in an isolated area far from the nearest neighbor).

■ In this case, the government argues there was no violation of the defendant's Fourth Amendment right to be free from unreasonable searches, since the cursory search of his residence falls within the "protective sweep" exception to the search warrant requirement. This Court does not agree. Under *Buie,* sweeping officers must have reason to believe the premises harbors an individual posing a danger to arresting officers. The officers had no reason to believe that any persons, other than the defendant and his wife, were present on the premises. They knew beforehand the defendant because Hausner went to high school with him in this small community. They called

him the day before, advising him to expect them at his home. They possessed no facts indicating the defendant might be dangerous.

Although Hausner testified it is "standard procedure" to conduct protective sweeps whenever arrest warrants for a suspect are executed within a suspect's home, this Court does not read *Buie* as giving *carte blanche* authority for law enforcement officers to conduct protective sweeps in all such cases. If it did, the requirement for reasonable suspicion based on specific and articulable facts, would be meaningless. Thus, this Court concludes that, under the specific facts of this case, the protective sweep which revealed the bong and poker is improper under the standard of *Buie. See United States v. Akrawi,* 920 F.2d 418, 420 (6th Cir.1990) (no basis for a protective sweep where agents could not point to any facts to support a reasonable belief that the second floor of two [2] story residence, where defendant was arrested, harbored any individual holding a threat to them; agents encountered no resistance upon entering the house; had no difficulty arresting suspect; were not subjected to threats of immediate harm; and heard no noises or voices indicating someone might be hiding on the second floor).

■ Since law enforcement officers did not have specific and articulable facts justifying a protective sweep of the defendant's apartment, this Court will recommend the defendant's motion to suppress evidence be granted. The state search warrant, which resulted in the seizure of the gun and other evidence from the defendant's residence was predicated solely upon the observations made by Hausner during his illegal protective sweep of the defendant's home earlier that day and, thus, evidence seized pursuant to that search warrant is subject to suppression, as the "fruit of the poisonous tree" under *Wong Sun v. United States,* 371 U.S. 471, 484–88, 83 S.Ct. 407, 414–18, 9 L.Ed.2d 441 (1963).

Parenthetically, this Court notes that, if the circumstances were deemed to justify a protective sweep, it would uphold the scope of the search as falling within the parameters defined by *Buie.* This Court believes the testimony of Hausner and the defendant that

the protective sweep lasted thirty (30) seconds and that Hausner moved no objects and opened no containers. This Court also finds credible Hausner's testimony that the bong and poker were in "plain view." The thirty (30) second time frame of the protective sweep by Hausner simply would not allow him to locate the bong and poker, if they had been concealed as described the defendant.

### CONCLUSION

**NOW THEREFORE, IT IS HEREBY RECOMMENDED** that the United States District Judge enter an order **GRANTING** defendant Schultz' motion to suppress.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13.03 (E.D.Wis.), whereby written objections to the foregoing recommendation may be filed in duplicate with the Clerk of Court within ten (10) days hereof. Failure to file a timely objection shall result in a waiver to your right to appeal.

MOTION AND ORDER FOR DISMISSAL

The United States of America, by and through its attorneys, Nathan A. Fishbach, United States Attorney for the Eastern District of Wisconsin, and Joseph R. Wall, Assistant United States Attorney for said district, hereby moves this Court for an Order dismissing the indictment previously handed down in this case on January 26, 1993. The basis of this motion is set forth in the attached affidavit of Assistant United States Attorney Joseph R. Wall.

Respectfully submitted this 6th day of April, 1993.

NATHAN A. FISHBACH
United States Attorney
by /s/ JOSEPH R. WALL
Assistant United States Attorney

Upon the motion of the United States of America,

IT IS HEREBY ORDERED that the indictment previously issued in the above-captioned matter be dismissed.

/s/ Thomas J. Curran
THOMAS J. CURRAN
United States District Judge

Date: Apr. 6, 1993

ATTACHMENT

### AFFIDAVIT

State of Wisconsin

County of Milwaukee

I, Joseph R. Wall, being first duly sworn upon oath depose and say:

1. I am an Assistant United States Attorney in the Eastern District of Wisconsin and am the prosecutor assigned to the above-captioned criminal case.

2. On March 11, 1993 the Honorable Magistrate Judge Robert L. Bittner heard testimony in support of the defendant's previously filed motion to suppress evidence seized by law enforcement during a search of the defendant's residence on December 3, 1992.

3. On March 19, 1993, the Magistrate issued a Recommendation to this Court that the defendant's motion be granted and that the evidence seized in the search of the defendant's residence be inadmissible at any subsequent trial of the defendant.

4. On March 29, 1993, the United States filed with this Court a notice of intent to object (appeal) to the Magistrate's decision.

5. Upon further review of the transcript as well as analysis of relevant case law, I have decided not to request a review of the Magistrate's decision. In view of the decision suppressing the evidence, the case can not proceed, and an Order dismissing the indictment is appropriate.

/s/ Joseph R. Wall
JOSEPH R. WALL

Subscribed and sworn to me this 6th day of April, 1993.

/s/ Silvia A. Martin
Notary Public, State of Wisconsin
My commission expires 7/16/95.