JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals the trial court's granting defendant-appellee Tonia Martin's ("Martin") motion to suppress. We find no merit to the appeal and affirm.
 {¶ 2} At the suppression hearing, the court heard testimony from one witness, Deputy Sheriff Bryan Smith ("Smith"). Smith testified that on September 19, 2001, he and two other deputies proceeded to a house in East Cleveland to execute a felony arrest warrant for Martin. He further testified that he did not know whether she lived at this house, whether anyone else lived there, or if she was considered dangerous.
 {¶ 3} When the deputies arrived at the house and approached the side door, Smith saw Martin look out a window and then run away. Smith knocked on the door and yelled, "Police" several times before entering the house. Upon entering, the deputies called Martin's name. When she failed to respond, the deputies began a protective sweep of the first floor of the house. Smith heard footsteps or "rumbling" upstairs, and Martin eventually came down the stairs, where the deputies arrested her.
 {¶ 4} Deputy Smith then went upstairs to determine whether there were any other people in the house. He testified that he did not know how many people were still in the house at that time and did not know if there were any other people remaining upstairs.
 {¶ 5} The upstairs consisted of one large room with a bed and a computer table. Smith testified that while he was conducting a protective sweep of the upstairs room, he noticed what appeared to be crack cocaine on a dinner plate inside a partially opened drawer of the computer table. Smith explained that the drawer was open about five or six inches and that he saw the crack cocaine in plain view. Martin was later charged with two counts of possession of drugs and one count of trafficking in drugs.
 {¶ 6} At the conclusion of the hearing, the court took the matter under advisement. On October 16, 2002, the trial court granted Martin's motion to suppress. In granting the motion, the court stated:
"Defendant's motion to suppress evidence is granted. Based on Marylandv. Buie, 110 S.Ct. 1093 (1990) and U.S. v. Akrawi, 920 F.2d 418 (1990),the 4th Amendment permits a protective sweep in conjunction with anin-house arrest when (sic) searching officer has a reasonable beliefbased on specific and articulable facts that the area to be searchedharbors an individual posing a danger to those on the arrest scene. Theofficer testified that defendant was arrested and handcuffed on the firstfloor of (sic) house before the sweep and the witness did not testify tospecific and articulable facts that someone was hiding upstairs."
 Protective Sweep {¶ 7} In its sole assignment of error, the State argues the trial court erred in granting Martin's motion to suppress because Deputy Smith testified to specific and articulable facts which warranted a "protective sweep" of the upstairs bedroom.
 {¶ 8} In considering a motion to suppress, the trial court assumes the role of trier of fact, and is in the best position to resolve factual questions and evaluate the credibility of the witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366. Consequently, in reviewing a trial court decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Curry (1994), 95 Ohio App.3d 93, 96, citingState v. Schiebel (1990), 55 Ohio St.3d 71. An appellate court, however, determines as a matter of law, without deferring to the trial court's conclusions, whether the law has been appropriately applied to those facts. Id., citing State v. Claytor (1993), 85 Ohio App.3d 623, 627. Here, the trial court's findings of fact are supported by competent, credible evidence; consequently, we focus on the application of the relevant law to those facts.
 {¶ 9} Both sides in the instant case rely upon Maryland v. Buie
(1990), 494 U.S. 325. In Buie, the United States Supreme Court set forth the standard for a warrantless "protective sweep" of a residence in connection with the arrest of an individual found at the residence. Specifically, the Buie Court held:
"We also hold that as an incident to the arrest, the officers could, asa precautionary matter and without probable cause or reasonablesuspicion, look in closets and other spaces immediately adjoining theplace of arrest from which an attack could be immediately launched.Beyond that, however, we hold that there must be articulable factswhich, taken together with the rational inferences from those facts,would warrant a reasonably prudent officer in believing that the area tobe swept harbors an individual posing a danger to those on the arrestscene."
Id., 494 U.S. at 333.
 {¶ 10} In Buie, the police arrived at Buie's home with an arrest warrant for Buie and his accomplice for a robbery in which one of the robbers wore a red running suit. In executing the warrant, an officer called Buie out of the basement. Although there was no particular reason to believe that anyone else was in the basement, a police officer entered the basement "in case there was someone else down there." The officer noticed a red running suit in plain view on a stack of clothing. The red running suit was the key evidence at trial to convict Buie.
 {¶ 11} Balancing the need to search against the invasion of privacy as the Court did in Terry v. Ohio (1968), 392 U.S. 1, 21, theBuie Court held that although a frisk occurs before an arrest, a protective sweep "occurs as an adjunct to a serious step of taking a person into custody for purposes of prosecuting him for a crime." Marylandv. Buie, supra, at 333. A protective sweep is not a full search of the premises, but only a cursory inspection of those areas where a person who poses a threat of danger to police may be found. Before an area may be searched, "[t]here must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334,110 S.Ct. at 1098. See, also, United States v. Rigsby (C.A. 6, 1991),943 F.2d 631, 637, certiorari denied (1992), 503 U.S. 908,112 S.Ct. 1269; United States v. Akrawi (1990), (C.A. 6, 1990), 920 F.2d 418.
 {¶ 12} In Buie, supra, the Supreme Court did not determine whether the "protective sweep" in that case met the test articulated by the Court, but remanded the case for a determination by the Maryland state court. However, in a concurring opinion, Justice Stevens offered the following observation:
"Indeed, were the officers concerned about safety, one would expectthem to do what Officer Rozar did before the arrest: guard the basementdoor to prevent surprise attacks. * * * As the court indicates, OfficerFrolich might, at the time of the arrest, reasonably have `looked in' thealready open basement door * * * to ensure that no accomplice hadfollowed Buie to the stairwell. But Officer Frolich did not merely `lookin' the basement; he entered it. That strategy is sensible if one wishesto search the basement. It is a surprising choice for an officer, worriedabout safety, who need not risk entering the stairwell at all."
Maryland v. Buie, 494 U.S. at 338.
 {¶ 13} In the instant case, Smith, the only witness to testify at the suppression hearing, admitted that there was nothing to suggest any threat of danger when he searched the upstairs bedroom. He explained that he searched the room as a matter of routine practice and not because there was any particular indication of potential danger. He testified as follows:
"Q: But there was nothing that stands out in your mind to indicate anyspecific danger on these premises, isn't that correct.
 "A: Like I said, we treat them all the same, no matter if we are inPepper Pike or in East Cleveland.
 "* * *
 "Q: But there was nothing specific in this case to indicate that therewas any danger?
 "A: No."
 {¶ 14} Without specific articulated facts which would warrant a reasonably prudent police officer to believe that the upstairs harbored an individual who posed a threat of danger to the police, the search of the upstairs bedroom was unlawful. Accordingly, we find the trial court properly granted the motion to suppress. The sole assignment of error is overruled.
Judgment affirmed.
PATRICIA ANN BLACKMON, P.J. and TIMOTHY E. McMONAGLE, J. concur.