**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mira Carolyn SMITH, Lydia Taylor,**
**Defendants-Appellants.**

Nos. 83–5812, 83–5817.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 7, 1984.

Decided Nov. 8, 1984.

Rehearing and Rehearing En Banc Denied
in No. 83–5817 Jan. 4, 1985.

Rehearing and Rehearing En Banc Denied
in No. 83–5812 Jan. 8, 1985.

W. Meredith Clark (argued) (court appointed), Memphis, Tenn., for defendant-appellant in No. 83–5812.

Henry V. Sutton (Lead) (argued), Mark W. Garrett (argued), Memphis, Tenn., for defendant-appellant in No. 83–5817.

W. Hickman Ewing, Jr., U.S. Atty., Robert M. Williams Jr., Alice Howze (argued), Asst. U.S. Attys., Memphis, Tenn., for plaintiff-appellee.

Before EDWARDS and MARTIN, Circuit Judges, and WALINSKI, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Defendants Mira Carolyn Smith and Lydia Taylor appeal their convictions after a jury found them guilty of violating 18 U.S.C. §§ 3, 1503 and 1622 and conspiring to violate these substantive provisions. Here, defendants raise several claims of error, the most serious being: The district court erred in refusing to excuse a juror for cause, and the court abused its discretion in severely limiting the cross-examination of a government witness.

Defendants were charged in a four-count indictment alleging the following offenses: accessory after the fact to a bank robbery, obstruction of justice, subornation of perjury, and conspiracy to commit these substantive offenses. On August 9, 1983, a jury found the defendants guilty on all four counts.

The indictment of the defendants arose as a result of a bank robbery committed by Ray Daes and David Allen Smith, the son of defendant Mira Carolyn Smith and brother of defendant Lydia Taylor. David Allen Smith was found guilty of robbing the Raleigh Branch of the First Tennessee Bank in Memphis, Tennessee, a federally insured bank. His conviction was affirmed by this Court without opinion. *United States v. Smith,* 729 F.2d 1463 (6th Cir. 1984). The testimony in the bank robbery trial established that the bank was robbed by a white male, wearing a silver motorcycle helmet and a green jump suit. Shortly after the robbery, the helmet and jumpsuit

* Honorable Nicholas J. Walinski, United States District Judge for the Northern District of Ohio, sitting by designation.

were found in a culvert located in a neighborhood several blocks from the bank. In the same neighborhood, FBI agents later found Mr. Smith hiding under a wooden deck.

After Mr. Smith was arrested and read his *Miranda* rights, he was taken into custody and interviewed. Once in custody Mr. Smith told the investigators that he and individual named "Ray" came to Memphis to meet someone who owed Mr. Smith some money. After driving around town, he and Ray finally arrived at a street called "Colonial," where they pulled up behind a car. Thereafter an individual left the car and two other men ran from between two houses and pointed guns at Mr. Smith and Ray. One of the men then forced Mr. Smith to change clothes with him, gave him a bag of money and then told Mr. Smith to run. Mr. Smith then left the scene.

At trial, Mr. Smith was found guilty of the bank robbery despite the testimony of Ray Daes that he and Mr. Smith had never robbed the bank. According to Daes' trial testimony, he and Mr. Smith were in Memphis to meet an unidentified individual. After arriving at the designated rendezvous, an individual came from between two houses wearing a motorcycle helmet and green jumpsuit. The man then ordered Mr. Smith out of the car, told him to remove his shoes and shirt, gave him a "few articles" and instructed Mr. Smith to run or be killed.

One day after his testimony, Daes was arrested by federal officials. Subsequently, Daes admitted that he and Mr. Smith had planned to rob the bank. He also admitted that he had testified falsely at Mr. Smith's trial. Daes told the officials that the defendants in this case, Mira Carolyn Smith and Lydia Taylor, had provided him with the false story and threatened him if he refused to cooperate with defendants' attempt to provide an alibi for Mr. Smith. Daes informed the authorities that the defendants sequestered him in several hotels throughout Arkansas over a four-month period from October 3, 1982 to January 10, 1983, the date of Mr. Smith's bank robbery trial. During this time the defendants forced Daes to memorize a manufactured alibi which would be used at Mr. Smith's trial. After his arrest, Daes was appointed counsel and told his attorney he wished to cooperate with government. Later, defendants were convicted of the charges contained in the indictment due to their efforts to procure the false testimony of Ray Daes. This appeal followed.

Defendants contend that the district court erred in refusing to excuse for cause juror James S. Johnston. On *voir dire,* juror Johnston indicated that he had read, on the day trial was to begin, a newspaper article about the defendants' impending prosecution and the earlier bank robbery trial of David Allen Smith. Defendants argue that juror Johnston's testimony on *voir dire* "clearly indicates that Mr. Johnston could only disregard the newspaper account if he were *convinced* somehow that the previous jury reached the wrong decision." Defendants argue that Mr. Johnston's answers reflect a preconceived opinion regarding their guilt. We disagree.

Once an individual juror indicates on *voir dire* a prior opinion about an impending criminal trial, the Constitution requires that the juror be seated only if the trial judge determines that the juror can lay aside his opinion and render a verdict based on the evidence presented in court. *United States v. Blanton,* 719 F.2d 815, 830 (6th Cir.1983) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984). *See also Patton v. Yount,* — U.S. —, —, 104 S.Ct. 2885, 2892 n. 12, 81 L.Ed.2d 847 (1984); *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961); *Holt v. United States,* 218 U.S. 245, 248, 31 S.Ct. 2, 4, 54 L.Ed. 1021 (1910); *Reynolds v. United States,* 8 Otto 145, 98 U.S. 145, 155, 25 L.Ed. 244 (1878). It is not required, nor can it be expected, that a juror be totally ignorant of the facts and issues involved in a criminal prosecution. *Reynolds v. United States,* 98 U.S. at 155–56; *Blanton,* 719 F.2d at 830; *United States v. Gay,* 522 F.2d 429, 432 (6th Cir.1975). *See also United States*

*v. Moon,* 718 F.2d 1210, 1218 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). "To hold the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1642–43. Rather, the trial judge must ascertain whether the juror is capable of putting aside his earlier views and reach a decision based only on the evidence presented at trial. Once such a determination has been made, it may not be overturned unless manifest error is shown. *Reynolds v. United States,* 98 U.S. at 156; *Blanton,* 719 F.2d at 830. *Cf. Patton v. Yount,* — U.S. at —, 104 S.Ct. at 2894 (state trial judge's determination on the impartiality of an individual juror is question of historical fact subject to 28 U.S.C. § 2254(d)'s presumption of correctness). Moreover, the burden is on the defendant to show manifest error. *Blanton,* 719 F.2d at 830; *Goins v. McKeen,* 605 F.2d 947, 951 (6th Cir.1979); *United States v. Wilson,* 715 F.2d 1164, 1168 (7th Cir.1983).

■ Here, we find no manifest error in the district court's determination on the impartiality of juror Johnston. Admittedly, some of Mr. Johnston's answers reveal some prior knowledge and impressions about the David Allen Smith prosecution. Nevertheless, when viewed as a whole, his declarations support the district court's conclusion that Johnson was capable of putting aside his earlier opinion and reaching a verdict based only on the evidence presented at trial. First, Mr. Johnston stated that he doubted the pretrial media coverage of the case would influence his decision regarding the defendants' guilt or innocence. Further, on several occasions Mr. Johnston affirmatively responded to the questions of the court and attorneys that he was capable of reaching an independent decision despite his exposure to the pretrial media coverage. Mr. Johnston also indicated a clear understanding that he was to disregard his knowledge that David Allen Smith had been found guilty in an earlier trial, and that he was free to determine whether the defendants had indeed been accessories after the fact to a federal bank robbery in Memphis, Tennessee. Mr. Johnston also stated that he understood that the defendants were entitled to a presumption of innocence notwithstanding the earlier conviction of David Allen Smith. These declarations and a review of the entire *voir dire* of Mr. Johnston reveal substantial support for the district court's determination that Mr. Johnston was capable of putting aside any preconceived notions he might have harbored about the defendants, and was prepared to render a verdict based only on the evidence presented at trial.

■ Defendants, however, point to one response of Mr. Johnston as illustrative of his inability to disregard his prior knowledge about the case. In response to a question about whether Mr. Johnston was able to disregard his earlier awareness that David Allen Smith had been found guilty by a previous jury, Mr. Johnston replied:

A. I am not sure that I am capable of answering that question. If there were evidence, if evidence were presented in this trial that made me have doubts about the guilt or the innocence of somebody else in another trial, I think that I could if somebody convinced me that maybe they weren't guilty. I don't know, maybe in my own mind I could say, well, I don't believe that they were both guilty of doing it even though I know.

Q. How much?

A. I have no idea. I have no idea.

Defendants assert this reply clearly indicates that Mr. Johnston believed it was up to the defendants to prove their innocence, rather than requiring the government to prove beyond a reasonable doubt the guilt of both defendants. We disagree. Mr. Johnston's response, although indicating some hesitation on his part to disregard his prior knowledge about David Allen Smith's guilt, is not so indicative of bias that preju-

dice is manifest. On the contrary, when this response is read in context with Mr. Johnston's other answers, we are convinced Mr. Johnston exhibited an ability to "lay aside his [earlier] impression or opinion and render a verdict based on the evidence presented in court." *United States v. Johnson*, 584 F.2d 148, 154 (6th Cir.1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979) (quoting *Irvin*, 366 U.S. at 723, 81 S.Ct. at 1643). The district court judge acknowledged this when he noted Mr. Johnston's earlier answers demonstrated "that he [Johnston] would listen to the evidence presented in this case ... and he will make his mind up based upon this evidence." Mere expressions of preliminary opinion about a defendant's guilt or innocence do not establish prejudice per se. "[L]ight impressions, which may fairly be presumed to yield to the testimony that may be offered, which leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror." *Reynolds v. United States*, 98 U.S. at 155 (quoting 1 *Burr's Trial* 416 (1807)). Only where a juror has indicated a refusal to consider the testimony and displayed evidence of a closed mind concerning a defendant's innocence can we say that the district court has abused its discretion in refusing to strike a juror for cause. The district court is better equipped than this court to assess the inflections and nuances presented during a jury *voir dire*. *United States v. Barber*, 668 F.2d 778, 786 (4th Cir.), *cert. denied*, 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). Therefore, unless the record reveals manifest error, we must defer to the district court. We find no manifest error in the district court's determination below, and hold that Mr. Johnston's remarks, viewed as a whole, reveal no inherent prejudice.

■ Defendants also argue the district court erred in limiting the cross-examination of a government witness. At trial the government called witness Susan Eichler to testify that defendant Mira Carolyn Smith and Ray Daes had purchased two motorcycle helmets on December 21, 1982 at a K-Mart store where Ms. Eichler was employed.[1] Also present at the time of the purchase was Belinda Hart, a friend of Ms. Eichler. After the purchase, Hart approached Eichler and informed her that the man who had just been at the register was Ray Daes, Rick Daes' younger brother. Later both Eichler and Hart testified that Ms. Eichler occasionally went out with Rick Daes. Ms. Eichler further stated that she also worked as a waitress at "Slick Willie's," a bar in Little Rock, Arkansas managed by Rick Daes. When defendants attempted to further cross-examine Ms. Eichler about the extent of her relationship with Rick Daes, the district court, *sua sponte*, ruled additional cross-examination would not be permitted. Defendants argue this ruling violated their right of confrontation protected by the sixth amendment. *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

Though the Supreme Court has recognized that the extent of cross-examination is within the "sound discretion" of the trial judge, *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931), at the same time the Court has been unyielding in its willingness to emphasize that "cross-examination of a witness is a matter of right." *Alford v. United States*, 282 U.S. at 691, 51 S.Ct. at 219. As stated by the Court in *Davis*, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.... The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110 (citing 3A J. Wigmore, *Evidence* § 940 at 775 (Chadbourn rev. ed. 1970)). *See also United States v. Touchstone*, 726 F.2d 1116, 1122 (6th Cir.1984);

---

1. The purchase of the helmets was ostensibly designed to conceal the origin of the motorcycle helmet worn by David Allen Smith during the bank robbery. The helmet used by Mr. Smith was owned by one of Ray Daes' younger twin brothers.

*Flowers v. Ohio,* 564 F.2d 748, 750 (6th Cir.1977) (right of cross-examination "is part and parcel of confrontation, and the latter is meaningless without the former").

Here, defendants assert the partiality of Ms. Eichler was extremely relevant. They note that the defense was precluded from asking "even the most rudimentary questions" about the nature and extent of Eichler's relationship with Rick Daes. They point out that Ray Daes had already entered into a plea bargain and had agreed to cooperate with the government in exchange for his testimony against the defendants. It is further argued Rick Daes had an interest in his younger brother's welfare and the outcome of the defendants' trial. Consequently, Ms. Eichler could have some motive, bias or prejudice against these defendants based on her relationship with Rick Daes. The United States, on the other hand, argues the defense was effectively able to portray any possible bias of Ms. Eichler through its argument to the jury.

We agree with the defendants that the district court abused its discretion in limiting the cross-examination of Ms. Eichler. The partiality of Eichler was certainly relevant to the testimony she gave, and the extent of her relationship with Rick Daes was a legitimate area in which to test her partiality. The evidence sought was not available from another source. The evidence was not cumulative, nor was there any indication of overreaching by defense counsel in the cross-examination of Ms. Eichler. In short, we find the jury was not provided "sufficient information concerning [Ms. Eichler's testimony] to make a 'discriminating appraisal' of [the] witness' motive and bias." *United States v. Touchstone,* 726 F.2d at 1123 (quoting *United States v. Campbell,* 426 F.2d 547, 550 (2d Cir.1970)). *See also United States v. Baker,* 494 F.2d 1262, 1267 (6th Cir.1974). Once the United States chose to put Ms. Eichler on the witness stand, the defendants had a protected right to show her testimony was not credible or biased. *See United States v. Garrett,* 542 F.2d 23, 27 (6th Cir.1976).

Though we find error in the district court's ruling on this matter, we nonetheless conclude that this error was harmless. *United States v. Duhart,* 511 F.2d 7, 9–10 (6th Cir.) (improper refusal to allow cross-examination of "merely rebutting" prosecution witness was harmless beyond a reasonable doubt), *cert. dismissed,* 421 U.S. 1006, 95 S.Ct. 2409, 44 L.Ed.2d 675 (1975); *United States v. Fife,* 573 F.2d 369, 377 (6th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977). *See also United States ex rel. Scarpelli v. George,* 687 F.2d 1012, 1014–15 (7th Cir. 1982); *United States v. Gambler,* 662 F.2d 834, 840–42 (D.C.Cir.1981).

In their briefs, defendants state that further cross-examination of Ms. Eichler would have revealed possible biases, prejudices or ulterior motives of the witness relating to the defendants. They also point out other discrepancies in her testimony which additional cross-examination would have highlighted. Even assuming the validity of these contentions, the failure to permit further cross-examination of this witness did not produce any prejudice. First, even if Eichler's credibility was impugned, the prosecution's case in chief did not rest upon the credibility of this witness alone. *See United States v. Brown,* 482 F.2d 1226, 1229 (8th Cir.1973). Both Hart and Eichler gave the same description of defendant Smith and Ray Daes' purchase at the K-Mart, and Hart was certainly not an interested witness. Moreover, other independent evidence of the defendants' guilt is contained in the record. There is an abundance of evidence confirming Ray Daes' testimony that the defendants sequestered him in hotels throughout Arkansas for over four months. This and other evidence contained in the record convinces us that the district court's error was harmless beyond a reasonable doubt. *United States v. Duhart,* 511 F.2d at 10; *United States v. Sidman,* 470 F.2d 1158, 1165 (9th Cir.1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973).

We have carefully examined the defendants' other claims of error and find them to

be without merit. Therefore, the judgment of the district court is affirmed.