952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
ELLWEST STEREO THEATRES OF MEMPHIS, INC., d/b/a/ Executive
South; Charles Long; and Rodney Skinner,
Defendants-Appellants.
 No. 91-5208.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Rodney Skinner, Charles Long, and Ellwest Stereo Theatres of Memphis, Inc. ("Ellwest"), appeal their convictions for selling obscene matter in violation of 18 U.S.C. § 1466 and 18 U.S.C. § 2. They raise issues concerning the constitutionality of 18 U.S.C. § 1466, rulings by the district court during trial, and application of the Sentencing Guidelines.
 
 
 2
 As defendants' arguments lack merit, we affirm the judgment of the district court.
 
 I.
 
 3
 Ellwest owns and operates three adult bookstores in the Memphis area that offer their patrons a selection of videotapes and printed matter. Long and Skinner served as president and secretary of Ellwest, respectively.
 
 
 4
 On August 17, 1989, a Memphis police sergeant purchased a videotape from the Executive South adult bookstore, which is owned and operated by Ellwest. A few hours later, a second police officer bought another copy of this videotape from the same store.
 
 
 5
 As a result of these transactions, a grand jury returned an indictment against defendants, charging them with engaging in the business of selling obscene matter which had been shipped in interstate commerce, in violation of 18 U.S.C. § 1466[1] and aiding and abetting such illegal activity, in violation of 18 U.S.C. § 2. They were convicted on May 11, 1990.
 
 II.
 
 6
 Defendants raise several challenges to the constitutionality of 18 U.S.C. § 1466.
 
 A. Mandatory Rebuttable Presumption
 
 7
 As written, the statute creates a rebuttable presumption that a person is "engaged in the business" of transferring obscene material if certain criteria set forth in the statute are met. Defendants contend that the presumption is mandatory because the statute reads "[the criteria] shall create a rebuttable presumption that the person so offering them is 'engaged in the business'...." 18 U.S.C. § 1466(b) (1988).
 
 
 8
 Use of a rebuttable mandatory presumption in a criminal prosecution amounts to a violation of due process guaranteed by the Constitution because it "relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding." Francis v. Franklin, 471 U.S. 307, 317 (1985).
 
 
 9
 In the case before us, the trial judge recognized that the charging statute, as written, could violate defendants' due process protections. She therefore instructed the jury in terms of a permissive inference. Consequently, we decline to rule on the constitutionality of 18 U.S.C. § 1466 as written, and instead turn to the propriety of the trial court's instruction.
 
 B. Permissive Inference
 
 10
 On the issue of whether defendants were "engaged in the business' of selling obscene matter, the trial court instructed the jury in the following terms:
 
 
 11
 In considering whether a defendant is engaged in the business of selling or transferring obscene matter, if you find that a person sold or transferred at one time two or more obscene items or two or more copies of an obscene item, you may find that person is engaged in the business of selling obscene matter. Whether you choose to draw such an inference is strictly up to you.
 
 
 12
 By couching its instruction in this manner, the district court left the determination of this element to the jury.
 
 
 13
 "A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Francis v. Franklin, 471 U.S. at 314. Under these circumstances, a defendant's due process rights are implicated only when "there is no rational way the trier could make the connection permitted by the inference." County Court v. Allen, 442 U.S. 140, 157 (1979). In determining whether a rational connection exists, the Supreme Court has offered this guidance: "[A] criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, 395 U.S. 6, 36 (1969).
 
 
 14
 Using this analytical framework, we conclude that the trial court's instruction regarding the "engaged in business" element passes constitutional muster. In assisting the jury in understanding an element of the crime, the court alluded to the definition preferred by Congress. The instruction did not require the jury to infer a fact from proven facts, however, because the drawing of the inference was expressly said to be permissive, not mandatory. Since it is more likely than not that the sale of two obscene films indicates that an individual is engaged in the business of selling obscene matter, the inference suggested to the jury passes the rationality test outlined in Leary.
 
 C. Void for Vagueness
 
 15
 Defendants argue that the terms "engaged in the business" and "as a regular course of trade or business" as used in 18 U.S.C. § 1466 are impermissibly vague.
 
 
 16
 This court has already considered, and rejected, a challenge to the phrase "engaged in the business" in the context of dealing in firearms. See United States v. Day, 476 F.2d 562, 567 (6th Cir.1973). The same analysis applies with equal force in the context of the statute under consideration.
 
 
 17
 In addition, the "two sale" definition found in the statute, when utilized in the context discussed above, unequivocally puts the public on notice of the level of activity that will support the drawing of an inference that an individual is engaged in the business of selling obscene material. While defendants may disagree with this standard, it is anything but vague.
 
 III.
 
 18
 We now turn to rulings made by the trial court that defendants contend deprived them of a fair trial.
 
 A. Jury Selection
 
 19
 It is asserted that the trial court's refusal to exclude three venirepersons for cause constituted error. We begin our discussion of this issue by noting that defendants' burden is onerous. Once the trial judge determines that a potential juror can set aside any existing prejudice, the decision will only be reversed on a showing of manifest error. United States v. Smith, 748 F.2d 1091, 1094 (6th Cir.1984).
 
 
 20
 Defendants object to the court's refusal to exclude prospective jurors Caldwell, Norfolk, and Ostroff for cause.[2] Of these three individuals, only the seating of Mr. Caldwell merits close scrutiny. We find nothing in the record to indicate that the court committed manifest error in the seating of either Ms. Norfolk or Ms. Ostroff.
 
 
 21
 The trial court's decision regarding Mr. Caldwell, however, requires further discussion. His responses to a jury questionnaire, later confirmed by questions from the court, make clear that he found the interracial aspect of the videotape objectionable. Without more, this sentiment might merit the exclusion of Mr. Caldwell for cause. Nonetheless, the trial court chose to probe the extent to which his views would affect his ability to render an impartial verdict:
 
 
 22
 THE COURT: [Could you] [t]alk about the evidence and render a fair and impartial verdict in the case?
 
 
 23
 MR. CALDWELL: Yes. Yeah, I can do that.
 
 
 24
 THE COURT: Okay. Can you do that without considering in any way the fact that some of the sexual conduct is between black people and white people, specifically, between black men and white women? Can you do that?
 
 
 25
 MR. CALDWELL: Yeah, I can.
 
 
 26
 THE COURT: You don't have any concern with that?
 
 
 27
 MR. CALDWELL: No, I don't have any doubt in my mind.
 
 
 28
 As the application of the manifest error standard of review indicates, the trial court has traditionally been accorded wide latitude in decisions regarding jury selection. Unlike the members of this court, the trial judge has the opportunity to observe and question potential jurors and is thus in a better position to determine whether a person, if seated, could render an impartial verdict.
 
 
 29
 Defendants were not entitled to a jury comprised of persons who approved of the content of the videotape. While Mr. Caldwell undeniably presented the trial court with a close call, we are satisfied that, on the basis of the colloquy cited above, the district court was warranted in concluding that this juror could set his personal convictions to one side and obey the court's instructions.
 
 B. Community Standards Instruction
 
 30
 Defendants contend that the trial court erred by instructing the jury as follows:
 
 
 31
 Contemporary community standards are set by what is in fact accepted in the community as a whole; that is to say by society at large or people in general; and not by what some persons or groups of persons may believe the community as a whole ought to accept or refuse to accept.
 
 
 32
 Although they concede that this language is taken verbatim from Federal Jury Practice and Instructions, § 62.07 (West 1977), defendants argue that the court should have substituted tolerated for accepted. As support for this proposition, they cite dictum from Smith v. United States, 431 U.S. 291, 305 (1977) (contemporary community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community). Despite this language, there is nothing in Smith that indicates that the Court intended to modify the seminal test outlined in Miller v. California, 413 U.S. 15, 32 (1973), which uses "acceptance" language.
 
 
 33
 Furthermore, subsequent to the Smith decision, this court, in United States v. Battista, 646 F.2d 237, 245 (6th Cir.), cert. denied, 454 U.S. 1046 (1981), reviewed this same contention and unequivocally rejected it.
 
 C. Obscenity Test Definitions
 
 34
 Defendants contend that their defense was prejudiced by the trial court's denial of their motion requesting a definition of the geographic boundaries of the relevant "community" to be applied in the community standards prong of the Miller test.
 
 
 35
 The Supreme Court has long since spoken on this issue. In Jenkins v. Georgia, 418 U.S. 153, 157 (1974), the Court explicitly approved the decision of the trial court to instruct jurors to apply "community standards" without specifying the exact extent of the "community."
 
 D. Right to Confront Witnesses
 
 36
 Defendants object, on Sixth Amendment grounds, to the trial court's refusal to permit them, on cross-examination, to ask one of the police officers why he felt the videotape was obscene. When considering this issue, we note that rulings such as the one in question should not be overruled without a showing of an abuse of discretion.
 
 
 37
 The trial court reasoned that this line of questioning would be both confusing and inappropriate, particularly because the question before the jury concerned what the average community member, not a police officer, judged to be obscene. Because we agree with this reasoning, the trial court cannot be said to have abused its discretion. See United States v. Marchesani, 457 F.2d 1291, 1297 (6th Cir.1972).
 
 IV.
 
 38
 Finally, defendants object to the trial court's application of the Sentencing Guidelines. Before reaching those issues, however, we must first address defendant Skinner's argument that 18 U.S.C. § 1466 does not apply to him.
 
 A. The Scope of Section 1466
 
 39
 Skinner argues that the charging statute is inapplicable to him because, as a salaried employee of Ellwest, he was not engaged in the prohibited activity with the "objective of earning a profit."
 
 
 40
 However, we need not reach the issue as Skinner frames it, because he was also charged under 18 U.S.C. § 2 as an aider and abettor. He does not dispute that Ellwest is subject to prosecution under 18 U.S.C. § 1466. Consequently, Skinner's conduct in furtherance of Ellwest's criminal conduct renders him chargeable as a principal under the terms of 18 U.S.C. § 2.
 
 B. Application of the Sentencing Guidelines
 
 41
 Defendants dispute three decisions with respect to the Sentencing Guidelines.
 
 
 42
 (1) Five-Level Enhancement for Skinner
 
 
 43
 The trial court imposed a five-level enhancement to Skinner's sentence pursuant to U.S.S.G. § 2G3.1(b)(1). This represents the minimum possible enhancement under this section.
 
 
 44
 Skinner's argument is similar to that just discussed: as an employee of Ellwest, he did not share in its profits. However, section 2G3.1(b)(1) reads as follows: "If the offense involved an act related to distribution for pecuniary gain, increase ... in no event by less than 5 levels."
 
 
 45
 This language does not explicitly limit the term "pecuniary gain" to profits derived from an ownership interest. As established at trial, Skinner received a salary as the result of his employment with Ellwest. This circumstance is sufficient to meet the pecuniary gain prerequisite.
 
 
 46
 (2) Enhancement for Violence
 
 
 47
 The trial court also added four offense levels to defendants under U.S.S.G. § 2G3.1(b)(2), which deals with material that portrays "[s]adomasochistic conduct or other depictions of violence." One scene from the videotape depicts a man's penis being sliced off.
 
 
 48
 Defendants argue that the principles of obscenity jurisprudence govern and, as a result, the work must be assessed as a whole. See Miller v. California, 413 U.S. at 24. When viewed in context, they contend that the scene at issue could be taken as humor or a dream sequence.
 
 
 49
 Defendants cite no authority in support of their contention that the Sentencing Guidelines are limited in such a fashion. Moreover, the jury had already determined that the videotape, taken as a whole, was obscene. It remained for the trial court simply to determine whether an enhancement for violence was merited pursuant to the guidelines.
 
 
 50
 (3) Reduction for Acceptance of Responsibility
 
 
 51
 The trial court found that defendants had not acknowledged responsibility for their conduct. Without a showing of clear error, this decision should be left to the trial court. United States v. Saenz, 915 F.2d 1046, 1047 (6th Cir.1990). Particularly in light of the fact that defendants put the government to its burden of proof at trial, we find nothing in the record to indicate that the trial court committed clear error in refusing their request for a reduction due to acceptance of responsibility.
 
 
 52
 Defendants raise several additional arguments in their briefs on appeal, but they are without merit.
 
 V.
 
 53
 For the foregoing reasons, the judgment and sentences of the district court are affirmed.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 This statute reads in part as follows:
 (a) Whoever is engaged in the business of selling or transferring obscene matter ... which has been shipped or transported in interstate ... commerce, shall be punished by imprisonment for not more than 5 years or by a fine under this title, or both.
 (b) ... [T]he term "engaged in the business" means that the person who sells ... obscene matter devotes time, attention, or labor to such activities, as a regular course of trade or business, with the objective of earning a profit, although it is not necessary that the person make a profit or that the selling or transferring or offering to sell or transfer such material be the person's sole or principal business or source of income. The offering for sale of or to transfer, at one time, two or more copies of any obscene publication, or two or more of any obscene article ... shall create a rebuttable presumption that the person so offering them is "engaged in the business" as defined in subsection (b).
 
 
 [2]
 These venirepersons were all excluded through the use of peremptory challenges. Because it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, we must reach this issue. United States v. Nell, 526 F.2d 1223, 1229 (5th Cir.1976) (citing Swain v. Alabama, 380 U.S. 202 (1965))