2 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Jermaine COTTRELL, Defendant-Appellant.
 No. 92-6388.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1993.
 
 Before MERRITT, GUY and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this case, defendant Jermaine Cottrell appeals his conviction and sentence for conspiracy to distribute crack cocaine and for possession with intent to distribute crack. We AFFIRM defendant's conviction, but remand the case to the district court for resentencing because we believe there was not sufficient evidence from which the district court could find defendant responsible for the relevant conduct attributed to him.
 
 I.
 
 2
 On September 26, 1991, Michael Cottrell, Richard Cottrell and defendant Jermaine Cottrell were present in a house where Agent Lee Porter of the Tennessee Bureau of Investigation (TBI) bought 5.4 grams of crack cocaine from Michael Cottrell for $600. Defendant was sitting at a table that had crack cocaine on it, counting money that was on the table. When Porter gave Michael the $600 for the crack, Michael handed defendant the $600. Michael also told Agent Porter that he recently had bought $4000 of worthless powdered cocaine that he could not cook into crack cocaine, and that he had made $4000 on each of two nights within that week by selling drugs. After leaving the house, Porter sealed the crack in an evidence envelope; the sealed envelope remained in his custody until he turned it over to the TBI lab for analysis.
 
 
 3
 On January 31, 1992, defendant was indicted on 10 drug counts. The jury convicted defendant on Count 1, conspiracy to distribute crack in violation of 21 U.S.C. Sec. 846, and on Count 10, possession with intent to distribute 5.4 grams of crack, in violation of 21 U.S.C. Sec. 841(a)(1). The district court sentenced defendant to 127 months on Counts 1 and 10, to run concurrently. Defendant now appeals his conviction and sentence on several grounds.
 
 II.
 
 4
 Defendant first argues that the trial court erred in not sustaining his Batson objection to the government's challenges to black jurors on the venire and in not declaring a mistrial because of these challenges. He argues that the government systematically removed blacks from the jury by using four of its five peremptory challenges to remove black venire persons. The government counters that it used four of six peremptory challenges on one white and three black venire persons because of the arrest or conviction of the jurors' relatives, and then made its fifth challenge on a black venire person for the same reason.
 
 
 5
 We find defendant's Batson challenge to be without merit. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986), the Supreme Court held that the Equal Protection Clause prohibits a prosecutor from peremptorily striking a venire person on the basis of race. Id. at 87, 106 S.Ct. at 1718. The provisions in Batson apply to the federal courts under the Fifth Amendment's Due Process Clause. United States v. Walton, 908 F.2d 1289, 1297 (6th Cir.), cert. denied, 498 U.S. 990, 111 S.Ct. 532 (1990). In Walton, this Court stated:
 
 
 6
 In order to establish a prima facie case of such discrimination, a defendant must show that he is a member of a cognizable racial group, that the prosecution struck members of the defendant's group from the venire, and that these and 'any other relevant circumstances raise an inference that the prosecutor used [peremptory challenges] to exclude the veniremen from the petit jury on account of their race.' [Batson, 476 U.S.] at 96, 106 S.Ct. at 1723. Once the defendant is able to establish a prima facie case, the burden shifts to the prosecution to come forward with a neutral explanation for challenging the jurors of the defendant's group. Id. at 96-97, 106 S.Ct. at 1723-24.
 
 
 7
 Id. at 1297.
 
 
 8
 Here, at the time defense counsel made the Batson challenge, the government had exercised four peremptory challenges, three against black jurors. The trial court held an in camera conference with government counsel and was advised that the challenges had been exercised because the three black jurors and the one white juror all indicated that they had relatives who had been convicted of crimes. The court found this to be a legitimate non-discriminatory reason, and noted that there were two blacks left on the jury. Jury selection resumed, and the government excused another black juror, the defense made another Batson challenge, and the court held another conference. The government counsel stated that this challenge was based on the fact that he had prosecuted and obtained the conviction of this juror's brother. The trial court again concluded that the government's challenge was for a reason other than race.
 
 
 9
 We find that even if defendant made out a prima facie case of discriminatory peremptory challenges, the government rebutted the prima facie case by producing a neutral explanation for the challenges. The government stated a legitimate non-discriminatory reason for the challenges--that these jurors had relatives who were convicted of crimes. Government counsel challenged four black jurors and one white juror for this stated reason, and the challenge to the white juror supports the conclusion that the challenges were race-neutral. The government did not challenge the alternate, a white juror who had a relative who had been convicted as well as a husband who had been a victim of crime. The government's argument that having a relative who was a victim of crime could be favorable to the government and could offset having a convicted relative is likewise reasonable and race-neutral. Accordingly, we affirm the district court's denial of the Batson challenge.III.
 
 
 10
 Defendant next argues that the trial court should have granted a mistrial because during voir dire a juror became upset when being questioned about her aunt's murder. We affirm the district court's refusal to excuse the juror for cause and its denial of the motion for mistrial.
 
 
 11
 Juror Ronda Parks stated that she was a secretary for a law firm and that her husband was a policeman. When asked if she had any family member who was a victim of crime, Parks stated that her aunt had been a victim. The following dialog between Parks and the court then occurred:
 
 
 12
 Q: Okay. What kind of crime was it?
 
 
 13
 A: I can't talk about it.
 
 
 14
 Q: All right. Well, I take it was an assault or a--
 
 
 15
 A: Yes.
 
 
 16
 Q: Okay. Where did that occur? Was it in--
 
 A: In Brownsville
 
 17
 Q: In Brownsville?
 
 
 18
 A: Um-hum.
 
 
 19
 Q: I remember that case several years ago, if I'm not mistaken. Were the perpetrators of that crime caught? Did they catch the people?
 
 
 20
 A: No.
 
 
 21
 Q: Ms. Parks, this case today is a drug case. It accuses the defendant of violating the drug laws of the United States. Is the fact that this is a drug case, is that going to present any problem for you in this case?
 
 
 22
 A: No.
 
 
 23
 Q: Is it going to be difficult for you to be fair to Mr. Cottrell?
 
 
 24
 A: No.
 
 
 25
 Q: Okay. Because I understand the kind of crime that your aunt was a victim of was not this kind of case.
 
 
 26
 A: No.
 
 
 27
 The court then asked Parks if she believed that the presumed innocent rule was a good one, and Parks responded yes. The defense then challenged Parks for cause because of her aunt's victim status, her work in a law firm, and her husband's police job, and because "she broke down and started crying in the jury box." The district court denied the challenge for cause, and the defense's motion for mistrial. The court noted that "I wouldn't even call it crying" and held that "the fact that she became visibly upset because her aunt was the victim of a crime is not a sufficient basis for a mistrial."
 
 
 28
 We review the district court's refusal to grant a mistrial for an abuse of discretion. United States v. Cameron, 953 F.2d 240, 243 (6th Cir.1992). We also review the refusal to strike a juror for cause only for an abuse of discretion. "Only where a juror has indicated a refusal to consider the testimony or displayed evidence of a closed mind concerning a defendant's innocence can we say that a district court has abused its discretion in refusing to strike a juror for cause. The district court is better equipped than this Court to assess the inflections and nuances presented during a jury voir dire." United States v. Smith, 748 F.2d 1091, 1095 (6th Cir.1984).
 
 
 29
 The district court did not err in failing to strike Parks from the jury for cause or in failing to grant a mistrial because of her becoming upset. The district court sought to establish that Parks would be fair in this case regardless of her aunt's murder. Parks clearly indicated that she could be impartial and that she agreed with the rule of presumed innocence. In addition, as the district court noted, defendant's trial was on a drug charge, not on a charge for a crime of violence. Thus, we find that the district court did not abuse its discretion.
 
 IV.
 
 30
 Defendant next contends that the trial court erred in not declaring a mistrial because a juror talked with defendant's girlfriend outside the courtroom during the trial. We find that the district court did not err in not declaring a mistrial and in not discussing the matter with the other jurors after the juror in question was dismissed.
 
 
 31
 On the second day of trial, defense counsel informed the district court that Juror McCullar had obtained outside information about the case. Defense counsel stated that the juror initiated a conversation with defendant's girlfriend while in the courthouse bathroom and asked how old the defendant was. The girlfriend said "19." The juror then said that she thought he was 13. The juror then asked if the defendant was her brother, and she replied that he was her boyfriend. The juror replied, "I'm sorry." The juror was questioned by the court, admitted to the conversation, and stated that she had not told any of the other jurors. The trial court held that "gaining extrajudicial information is so inherently prejudicial" that the defense could have her removed from the jury. Defense counsel stated that he wanted her removed, and he moved for a mistrial because it was not clear that the juror had not told the other jurors. The trial court excused the juror, but denied the motion for mistrial and refused to discuss the matter with the rest of the jury.
 
 
 32
 In United States v. Pennell, 737 F.2d 521 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 906 (1985), we held that a district court's decision not to grant a mistrial after investigating allegations of unauthorized contact with jurors could only be reviewed for an abuse of discretion. Id. at 533. The Pennell Court stated that under the Supreme Court case of Smith v. Phillips, "the burden of proof rests on a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed." Id. at 532. See Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940 (1982) (holding that it is now the defendant's burden to prove prejudice).
 
 
 33
 Phillips held that the remedy for a partiality challenge to a juror is a hearing during which defendant is entitled to be heard. 455 U.S. at 216, 102 S.Ct. at 945. Here, the district court held a hearing, heard defense counsel's recitation, heard the juror's testimony, and listened to defendant's arguments about why the rest of the jury should be questioned about the matter and why a mistrial was necessary. After the hearing, the juror was excused from the jury and did not participate in the rest of the trial or deliberations. The juror stated that she had not told any of the other jurors about the conversation. Phillips mandates that such juror testimony at these hearings not be regarded as "inherently suspect." 455 U.S. at 217 n. 7, 102 S.Ct. 946 n. 7. Also, defense counsel did not ask to question the juror himself and did not object to the trial court's reliance on defense counsel's recitation of the conversation rather than having the girlfriend relay the conversation.
 
 
 34
 Defendant failed to show that he was prejudiced by the communications or that any of the other jurors knew about the conversation. Accordingly, we find that the trial court did not abuse its discretion in refusing to grant a mistrial. Neither did the district court abuse its discretion by refusing to question the other jurors about the incident because of the prospect that such questioning would taint them.
 
 V.
 
 35
 The defendant also argues that the trial court improperly admitted the cocaine into evidence without sufficient proof of the chain of custody. The government's first witness was Martina Crosby, a forensic scientist at the TBI lab who was qualified as an expert in the field of forensic toxicology. She testified that Agent Porter delivered an envelope to her lab's technician, Loretta Sisk. Crosby further testified that her analysis established that the envelope contained 5.4 grams of crack. Defendant argues that the government's failure to produce Sisk, the lab technician to whom Agent Porter gave the cocaine and who in turn gave the sample to Crosby, created a break in the chain of custody, and therefore the cocaine should not have been admitted.
 
 
 36
 We find that the district court did not err in admitting the evidence although the lab technician did not testify at trial. A dispute as to the chain of custody goes primarily to the weight of the evidence rather than to its admissibility, and a district court's determination of the admissibility of the evidence will not be overturned absent a clear abuse of discretion. United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, 498 U.S. 1091, 111 S.Ct. 974 (1991).
 
 
 37
 Here, there was no abuse of discretion. Crosby testified that on September 27, 1991, Agent Porter brought the envelope to the lab and gave it to Sisk, who put it on Crosby's shelf in a locked room. Crosby testified that on October 1, 1991, she took the sample from her shelf and analyzed it. She noted that the seal on the evidence bag had not been tampered with before her analysis. Agent Porter also testified that the day after he received the cocaine, he sealed the crack in an evidence bag and turned it over to the lab. The trial court admitted the evidence over the defendant's objection that there had been a break in the chain of custody, relying on the case law stating that a minor break in the chain goes to weight, not admissibility.
 
 
 38
 Clearly there was a break in the chain of custody. However, since Porter gave the sample to Sisk in a sealed envelope, since the sample was put in a locked room, and since Crosby testified that the seal was not tampered with when she analyzed it five days later, only a minor break in the chain of custody occurred. This minor break goes to the weight, not the admissibility, of the evidence. Levy, 904 F.2d at 1030. We cannot say that the district court abused its discretion in admitting the evidence despite the break in the chain of custody.
 
 VI.
 
 39
 Finally, defendant appeals the amount of drugs that the district court attributed to him in calculating his sentence. We reverse the district court's sentence of defendant Cottrell and remand the case for resentencing because we find that there was not sufficient evidence in the record to support the amount of drugs attributed to defendant.
 
 
 40
 As noted earlier, Agent Porter testified that at the time of the sale of the 5.4 grams of crack and while defendant was present, Michael Cottrell told Porter that he had sold $4000 worth of cocaine the previous night and another $4000 the previous Sunday. The district court found that based on Agent Porter's and Michael Cottrell's testimony, defendant "was apparently the bookkeeper of this operation, or at least a financial officer of this operation--he was counting the money--that he certainly had knowledge of the scope and the extent of this cocaine distribution ring." The court then converted the two $4000 amounts sold on previous nights into 80 grams of crack and stated that therefore "defendant was directly involved in this cocaine distribution of more than 50 grams." Defendant argues that the sentencing court erred in attributing 85.4 grams of crack to defendant, the 5.4 grams sold to Agent Porter plus the estimated 80 grams of crack inferred from two $4000 transactions.
 
 
 41
 We must give deference to a sentencing court's finding unless the finding is clearly erroneous. United States v. Paulino, 935 F.2d 739, 756 (6th Cir.), cert. denied, 112 S.Ct. 315 (1991). A district court's finding as to the amount of drugs that a defendant is accountable for is a factual finding that we must accept unless clearly erroneous. Id.; United States v. Walton, 908 F.2d at 1300-01.
 
 
 42
 Guideline Sec. 1B1.3 states that a defendant's offense level should be determined on the basis of acts committed or aided by defendant and "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction...." U.S.S.G. Sec. 1B1.3(a)(1). The commentary to Sec. 1B1.3 states that for a jointly undertaken criminal activity, a defendant is accountable "for the conduct (acts and omissions) of others that was both: (i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." Sec. 1B1.3 commentary n. 2. The commentary continues:
 
 
 43
 The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision.... In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake (i.e. the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others.
 
 
 44
 With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.
 
 
 45
 Sec. 1B1.3, commentary n. 2 (emphasis added).
 
 
 46
 In addition, Guideline Sec. 2D1.1 n. 12 states: "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See Sec. 1B1.3(a)(2) (Relevant Conduct)." Guideline Sec. 2D1.4 stated at the time of defendant's sentencing:
 
 
 47
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial and other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.
 
 Sec. 2D1.4, n. 2.[1]
 
 48
 Defendant was convicted on Count 1, conspiracy to distribute 50 grams of crack, and on Count 10, possession with intent to distribute 5.4 grams of crack. Defendant is clearly responsible for the 5.4 grams that Michael Cottrell sold to Agent Porter because defendant took the money from Michael, counted it and put it with the rest of the money he was counting. However, we find that there is not sufficient evidence to find that defendant is responsible for either of the $4000 sales claimed by Michael Cottrell in conversation with Agent Porter. It is true that under Sec. 2D1.4 n. 2, even when there is no drug seizure, a sentencing court can "approximate the quantity of the controlled substance" by using the price generally used or the price paid in similar transactions. Yet here there is no direct evidence of the existence of either the $8000 or the estimated 80 grams of cocaine. No agent ever saw the 80 grams of crack or the $8000 in drug money. The existence of the $8000 is supported only by Michael Cottrell's bragging. This is not sufficient evidence to make the claimed sale of the estimated 80 grams relevant conduct. We cannot say that the estimated 80 grams were "reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook," Sec. 1B1.3, commentary n. 2, and thus foreseeable and attributable to defendant, without some evidence of the existence of either the money or the drugs. To do so would require us to pile inference upon inference, which we are not permitted to do.
 
 
 49
 This is not to say that on remand the district court may not find defendant responsible for other drug amounts attributable to the conspiracy in addition to the 5.4 grams sold to Porter on that one occasion. Agent Porter testified that at the time of the sale, defendant was sitting at a table counting money. He also said that between March 14, 1991, and December 5, 1991, he bought 32.35 grams of crack from those in the Cottrell conspiracy. Porter also read a statement from co-conspirator Denise Brooks, stating that "Jermaine Cottrell, Peanut, would sell crack for Michael Cottrell." Porter also said that Omar Sherron said in his trial that defendant sold cocaine out underneath a tree in front of the house where the transaction at issue in this case took place. A statement from Keith Davis stated that "Jermaine Cottrell, Peanut, would be counting money, but I'm not sure whose money it was," and Larry Davis said defendant sold him crack. This evidence was clearly sufficient for sentencing purposes to show, by a preponderance of the evidence, that defendant was part of the Cottrell conspiracy and that he sold drugs on previous occasions. Accordingly, he is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction...." Sec. 1B1.3(a)(1). Therefore, we remand to the district court to reconsider the drug amount reasonably foreseeable to the defendant as a member of the conspiracy.
 
 VII.
 
 50
 For the reasons set out above, we AFFIRM defendant's conviction but remand the case to the district court for resentencing consistent with this opinion.
 
 
 
 [1]
 This commentary was deleted effective November 1, 1992, about a month after defendant's sentence. It is now included in the commentary to Sec. 2D1.2, n. 12. All of Sec. 2D1.4, governing attempts and conspiracies, was deleted and consolidated into Sec. 2D1.2