**File Name:  06a0005n.06**
**Filed:  January 3, 2006NOT RECOMMENDED FOR**
**FULL-TEXT PUBLICATION**

Nos: 04-3672/04-3791

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATE S OF AMERICA,
        *Plaintiff-Appellee*

                                                On Appeal from the
                v.                              United States District Court for
                                                the Northern District of Ohio

STANLEY CORNELL, NORMAN POMALES,
        *Defendants - Appellants*

_____/

        BEFORE:  KEITH, KENNEDY, and BATCHELDER, Circuit Judges.

        KENNEDY, Circuit Judge.

        Defendants Stanley Cornell and Norman Pomales both were convicted of conspiracy to

possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a), (b)(1)(A), and with

unlawfully and knowingly using a communication facility, a telephone, to facilitate acts constituting

a felony in violation of  21 U.S.C. § 843(b).  Cornell was also convicted of violating 21 U.S.C. §§

841(a)(1) and (b)(1)(C), possession and distribution of cocaine.  Both defendants appeal their

convictions and sentences.  For the following reasons, we affirm Cornell's conviction and his

sentence.  We also affirm Pomales' conviction, but we remand his case for resentencing under

*United States v. Booker*, 125 S.Ct. 738 (2005).

## BACKGROUND

In May of 2001, the Drug Enforcement Agency began a narcotics investigation and discovered a wide-ranging drug conspiracy involving, among numerous others, Defendants Stanley Cornell ("Cornell") and Norman Pomales ("Pomales"). On November 19, 2003, a grand jury returned a thirteen-count indictment against Defendants Cornell, Pomales, and seven other defendants charging all defendants in count one with conspiracy to possess with the intent to distribute more than 50 grams of cocaine base and/or more than 5 kilograms of cocaine powder in violation of 21 U.S.C. §§ 841(a), (b)(1)(A), and 846. Cornell was also charged in count two with possession with intent to distribute and distribution of approximately 154 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and in count three with using a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b). Pomales was also charged in count seven with a § 843(b) violation.

On February 27, 2004, the jury returned verdicts of guilty against Cornell and Pomales on all counts. On May 13, 2004, the district court sentenced Cornell to mandatory life without parole on count one, 360 months' incarceration on count two, and 48 months' incarceration on count three (to run concurrently). On May 27, 2004, the district court sentenced Pomales to 360 months' incarceration on count one and 48 months' incarceration on count seven (to run concurrently). Both Defendants appeal their convictions and sentences. We address each Appellant's arguments in turn.

## ANALYSIS

### Appellant Cornell's Arguments

I.

Cornell argues that the district court erred by increasing his sentence to mandatory life without parole. We review this sentencing claim *de novo*. *United States v. McDaniel*, 398 F.3d 540, 546 (6th Cir. 2005).

Cornell relies on *United States v. Booker*, a Supreme Court case holding the Federal Sentencing Guidelines are advisory rather than mandatory, to argue that the district court violated his Sixth Amendment rights by enhancing his sentence beyond the jury verdict. In *Booker*, the Court stated that, "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756 (emphasis added).

Cornell was convicted of three counts, including possessing more than 50 grams of crack and more than five kilograms of cocaine. Under 21 U.S.C.A. § 841(a), it is unlawful "(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance" and any person who does so "after two or more prior convictions for a felony drug offense have become final, . . . shall be sentenced to a *mandatory term of life imprisonment* without release and fined in accordance with the preceding sentence." § 841(b)(1)(A) (emphasis added). The United States filed an enhancement notice that indicated Cornell has five prior drug felony convictions. Because of the jury verdict, his five prior felony

3

convictions, and his 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 conviction, Cornell was subject to the statutorily imposed, mandatory penalty of life without parole.[1]

## II.

Cornell argues the district court improperly admitted witness testimony about events occurring during the charged conspiracy. The admission of testimony and other evidence is reviewed for abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). "A court will find an abuse of discretion where it has a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Huey v. Stine,* 230 F.3d 226, 228 (6th Cir. 2000) *(*quoting *Balani v. INS,* 669 F.2d 1157, 1160 (6th Cir.1982). When a party does not object to the admission of evidence, we review for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993).

Cornell argues the district court abused its discretion by admitting evidence of his possession of a firearm and that the district court committed plain error by allowing testimony that he robbed two of the government's witnesses. At issue is the testimony of two coconspirators: Jason Hager and Randall Allman. Hager testified that during the conspiracy, Cornell went to Hager's house and asked to use Hager's cocaine press to turn a half kilogram into a full kilogram. Hager went on to testify that while Cornell was at Hager's house, he asked Hager about his gun, picked up the gun, and proceeded to make fun of Hager because the gun was not loaded. Hager then testified, "I thought he put it back in the drawer but when he left with the kilo of cocaine I noticed my gun was gone and I called him and he said he forgot it and he took it and that night my house got broken into

---

[1]Since Cornell is subject to life imprisonment without parole under count one, and as we find no errors relating to count one, we need not address whether the district court impermissibly increased Cornell's sentence on count two by engaging in independent judicial fact-finding.

4

and my press, the big machine, was stolen." (J.A. at 202.)  Allman also testified that he stopped working with Cornell around the end of 2000, because Cornell robbed him.  Allman claims he gave Cornell $10,000 to purchase cocaine and while Cornell kept the money, he never gave Allman any drugs.

Federal Rule of Evidence 404(b), with some exceptions, prohibits the admission of evidence of other crimes or wrongs "to prove the character of a person in order to show action in conformity therewith."   However, the evidence is admissible for other reasons, like proof of motive, opportunity, preparation, plan, and identity. *See United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999); Fed R. Evid. 404(b).  Thus, the Supreme Court has stated that "[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States,* 485 U.S. 681, 686, 108 S.Ct. 1496, 1499 (1988).  Rule 404(b), and the requirement that some permissible purpose be provided, however, only applies to "extrinsic" evidence.  "When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed 'extrinsic.' 'Intrinsic' acts on the other hand, are those that are part of a single criminal episode.  Rule 404(b) is not implicated when the other crimes or bad acts evidence is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Where the challenged evidence is "inextricably intertwined" with evidence of the charge in the indictment, circuit courts agree that Rule 404(b) does not apply. *Id., United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982) (per curiam).

Cornell argues the government's "only" purpose for introducing this evidence was to show that Mr. Cornell was  a thief and that he acted in conformance with his bad character by committing

5

the present offense. (Cornell's Br. at 15.) He relies on *United States v. Zelinka*, another drug conspiracy case, where a witness' "other acts" testimony was held inadmissible. 862 F.2d 92, 99 (6th Cir. 1988). However, in *Zelinka* the government conceded that the conspiracy had ended almost a year and a half prior to the defendant's arrest (*id.* at 98), while, in this case, the "other acts" testimony concerned events that occurred during the conspiracy between members of the conspiracy.

Contrary to Cornell's claim that the evidence and testimony admitted "only" served the purpose of showing his bad character, we hold that such evidence was used to show Cornell's involvement in an ongoing conspiracy. Further, because the events related by Hager and Allman were admitted to show Cornell's continued involvement in a conspiracy with them, the evidence of the "other acts" is sufficiently intertwined with the evidence of an ongoing conspiracy. *See United States v. Walton*, 908 F.2d 1289, 1299 (6th Cir. 1990) (rejecting a claim that evidence of drug paraphernalia was overly prejudicial and finding Rule 404(b) inapplicable since the evidence "was admitted to prove continued involvement in the conspiracy, rather than other similar crimes").

III.

Cornell contends that the district court abused its discretion by admitting Jason Hager's testimony that Cornell said that "if anything happened to him, his friend Ken Hunt would do something to me. . . He said if anything happened to him, I would not be able to go back in the yard in the prison I'm at." (J.A. at 205.) Hager had previously testified that Hunt was Cornell's cocaine distribution partner and he had met Hunt through Cornell during the conspiracy. Cornell argues, on appeal, that this testimony was overly prejudicial and should not have been admitted.

We have repeatedly held that evidence that a defendant threatened a government witness is generally admissible to show guilt. *United States v. Copeland,* 321 F.3d 582, 597 (6th Cir. 2003)

6

("Thus, subject to the balancing of the statement's probative value and prejudicial effect pursuant to Fed.R.Evid. 403, threats against witnesses are usually considered admissible."); *United States v. Maddox,* 944 F.2d 1223, 1230 (6th Cir. 1991) ("Spoliation evidence, including evidence that the defendant threatened a witness, is generally admissible because it is probative of consciousness of guilt."); *United States v. Fortson*, 194 F.3d 730, 737 (6th Cir. 1999) (same); United *States v. Mendez-Ortiz,* 810 F.2d 76, 79 (6th Cir. 1986) ("The fact that defendant attempted to ... threaten an adverse witness indicates his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.") (internal quotation marks and citation omitted).

As we find that this evidence was highly probative of Cornell's consciousness of guilt and of his involvement with co-conspirator Hunt, we hold the district court did not abuse its discretion by admitting this testimony.

IV.

Cornell next argues that the trial court erred in failing to ask him whether he waived his counsel's conflict of interest and, in failing to do so, denied him his Sixth Amendment right to the effective assistance of counsel. We review whether there has been an actual conflict of interest *de novo*. *United States v. Walker*, 160 F.3d 1078, 1089 (6th Cir. 1998).

The government called Benny Ingram as a witness and after a few minutes Cornell's counsel, Friedman, asked for a side-bar. Friedman indicated he had previously represented Ingram in a habeas appeal. Both Friedman and Ingram explained that the prior representation had nothing to do with Cornell. Friedman moved for a mistrial stating that his loyalties were divided. His motion was denied but a motion to strike Ingram's testimony was granted. The next day, however, the district

7

court discovered that Friedman had known of Ingram's potential testimony since January 23, 2004. The court then permitted Ingram to be recalled for an *in camera* hearing and questioned at length. During his testimony, Ingram orally waived any attorney-client privilege and potential conflict of interest. He eventually executed a written waiver.

After Ingram's direct examination, Friedman cross-examined and re-crossed-examined him. He asked him about their attorney-client relationship, about facts he had learned during his prior representation, his prior record, his attempts at cooperation with the government, and his relationship with Cornell (which established that some "bad blood" existed between them).

In order to be entitled to relief on this claim, Cornell must first show that Friedman's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). Next, Cornell must show that the deficient performance prejudiced the defense which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In view of Friedman's thorough and seemingly faultless cross-examination of Ingram, we hold Cornell cannot establish Friedman's performance was deficient.

V.

Cornell argues that the district court permitted Darrel Pinson to testify in violation of the Confrontation Clause about a conversation he had with his brother. We review this argument for plain error because Cornell did not object to the admission of this evidence in the district court. *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004). An appellate court may only correct

8

an error not raised at trial if there is "(1) error, (2) that is plain, and (3) that affected substantial rights." *Olano*, 507 U.S. at 732.

Pinson, a confidential government informant, testified that he spoke to Cornell in August of 2001 and that Cornell agreed to sell Pinson drugs. However, the only witness who allegedly saw Cornell deliver the drugs - Pinson's brother - never testified at trial. Rather, only Pinson testified that his brother told him that Cornell went to his house and sold drugs.

In *Crawford v. Washington*, the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause. 541 U.S. 36 (2004). The Court did not provide a comprehensive definition of "testimonial" but did find it applied "at minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogation." 541 U.S. at 68.

Cornell argues that Pinson's testimony regarding what his brother, Darrel, said is "testimonial" because of the "critical nature of [the] statement" and thus was admitted in violation of the Confrontation Clause. (Cornell's Br. at 23.) Cornell relies on our decision in *United States v. Cromer*, where we held "statements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant." 389 F.3d 662, 670-71 (6th Cir. 2004). In the case at bar, Darrel was not a confidential informant, but the brother of a confidential informant who did testify at trial, and thus, was subject to cross-examination. Moreover, Darrel communicated the information to his brother rather than a police officer, and thus had no reason to believe his statements would be used at trial. Thus, we hold that Pinson's testimony did not violate the Confrontation Clause.

9

Cornell contends the government failed to prove beyond a reasonable doubt the quantity of the drugs alleged in the indictment in violation of his Fifth Amendment right to due process. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).

Because there was some testimony that Cornell sold what he refers to as "counterfeit cocaine," he contends that no rational finder of fact could find beyond a reasonable doubt that he sold large quantities of cocaine. First, we note that this "counterfeit cocaine" was still actually cocaine - it just could not be cooked into crack cocaine - and that one witness, Allman, went on to testify that Cornell replaced this poor quality cocaine with better cocaine. Of more significance, however, is the fact that numerous witnesses testified that Cornell sold them large quantities of cocaine. The testimony - even excluding the testimony regarding so-called "counterfeit cocaine" - was clearly sufficient to support the jury finding.

## VII.

Cornell argues the district court erred in refusing to modify the record to include a report written by Officer Clayton. When a district court settles a dispute about what occurred in proceedings before it, the court's determination is conclusive unless intentionally false or plainly unreasonable. *U.S. v. Hernandez*, 227 F.3d 686, 695 (6th Cir. 2000).

Agent Clayton wrote a report indicating that he did not see Cornell at the scene of a drug transaction on August 13, 2001. Cornell's counsel filed a motion to supplement the record pursuant to Fed. R. App. P. 10(e)(2)(B). The government objected and the court denied the motion. The

report was never offered into evidence by any of the parties. Rule 10(e) allows amendment of the record on appeal only under two circumstances: "(1) when the parties dispute whether the record actually discloses what occurred in the District Court and (2) when a material matter is omitted by error or accident." *United States v. Barrow,* 118 F.3d 482, 487 (6th Cir. 1997). Courts should amend the record when it would ensure that the appellate record accurately reflects the record before the district court, not when the amendment would provide this Court with new evidence not before the District Court, even if the new evidence is substantial. *Id.* at 487-88 (citing *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 641 (6th Cir. 1982)).

Cornell requests that this court amend the record because the report may show prosecutorial misconduct (as perhaps the prosecutor knowingly used perjured testimony) and provide Cornell with an ineffective assistance of counsel claim (as his counsel did not have an opportunity to use this report in his cross-examination). We decline to amend the record in this case as the report would provide us with new evidence that was not before the district court.

VIII.

Cornell argues that the mandatory life incarceration provision of 21 U.S.C. §841(b)(1)(A) violates the Eighth Amendment. He therefore raises a constitutional challenge to his sentence, over which, as a question of law, this court exercises *de novo* review. *United States v. Smith*, 73 F.3d 1414, 1417 (6th Cir. 1996).

In reviewing Eighth Amendment challenges, we have adhered to the "narrow proportionality principle" articulated in *Harmelin v. Michigan,* 501 U.S. 957, 994-95, 111 S.Ct. 2680, 2702 (1991). *See United States v. Hopper,* 941 F.2d 419 (6th Cir.1991). In *Harmelin,* a plurality held the Eighth Amendment only prohibited "extreme sentences that are 'grossly disproportionate' to the crime"

11

and, applying this principle, rejected the defendant's argument that his life term without parole was disproportionate for his first felony conviction. *Harmelin,* 501 U.S. at 1001 (Kennedy, J., concurring).

We have previously addressed the constitutionality of §841(b)(1)(A) in *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994). In *Hill*, we held that a life sentence without parole was not grossly disproportionate to the defendant's instant crime, his third felony drug offense involving 177.8 grams of cocaine base. Turning to the case at hand, we note that this is Cornell's sixth felony drug conviction involving two kilograms of crack and 100-150 kilograms of cocaine. Given our decision in *Hill*, we find that Cornell's argument is without merit.

IX.

Cornell argues that the government erred by not charging him, in his indictment, with 21 U.S.C. § 851(a)(1) and (2). Section 851(a)(2) states:

> An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment *for the offense for which such increased punishment may be imposed*.

(emphasis added). However, we find this argument is without merit as the statute is referring to the *instant offense* for which the defendant was convicted rather than referring to actually including the sentencing enhancement statute, § 851(a)(1) and (2), in the indictment.

X.

Cornell next argues that count two is duplicitous because it charges him with both "possession with intent to distribute" and "distribution of 154 grams of a mixture or substance containing a detectable amount of cocaine."

12

We note the sufficiency of the indictment was not challenged until this appeal, and so we will construe it liberally in favor of its sufficiency. *United States v. Gibson,* 513 F.2d 978, 979 (6th Cir. 1975). Under Federal Rule of Criminal Procedure 7(c), "[i]t may be alleged in a single count that ... the defendant committed [the offense] by one or more specified means." Further, the Supreme Court has noted "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. U.S.*, 396 U.S. 398, 420, 90 S.Ct. 642, 654 (1970).

Not only does the crime Cornell was convicted of, § 841(a), include both possession and distribution,[2] but this count charges the defendant in the conjunctive. Thus, we find the indictment is not duplicitous.

## XI.

Finally, Cornell argues that count one of his indictment was defective for failing to charge him with "willful joinder" in the conspiracy. Count one of Cornell's indictment charged that he and others "did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together and with each other...posses[ed] with intent to distribute [various amounts of drugs]." However, Cornell asserts that even though "willfully" is not stated in 21 U.S.C. §846, it is an "implied and necessary element that the government must prove for a conviction under Section 846." (Cornell's Supplemental Br. at 8.)

---

[2] 21 U.S.C. §841(a) provides, "it shall be unlawful for any person knowingly or intentionally- (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

Cornell did not object to the indictment at trial and so the plain error standard applies. Given this standard, we need not address whether count one was defective as Cornell does not allege that it was, and we see nothing in the record to indicate, that he was prejudiced by this alleged error. *Olano,* 507 U.S. at 734-35.

**Appellant Pomales' Arguments**

I.

Pomales first argues his counsel was ineffective. We review ineffective assistance of counsel claims *de novo* (*Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir. 1992)), however, as a general rule an appellant may not raise an ineffective assistance of counsel claim for the first time on direct appeal because "there has not been an opportunity to develop and include the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990) (citing *United States v. Hill*, 688 F.2d 18, 21 (6th Cir. 1982)). Yet, where the record has been sufficiently developed to assess the merits of the defendant's claims, courts have made an exception and considered such claims on direct appeal. *Wunder*, 919 F.2d at 37.

Pomales argues his counsel's representation fell below an objective standard of reasonable representation because his attorney: 1) failed to join in the government's motion to exclude Juror 8 for cause, 2) failed to request a jury instruction regarding government informers testifying as co-conspirators; and 3) failed to request a jury determination whether the government established the requisite nexus between the property Pomales forfeited and the offense for which he was ultimately convicted. Because these issues are not fully developed in the record before us, we decline to review this issue at this time.

14

II.

Pomales argues that the evidence introduced by the government was insufficient to convict him of the conspiracy charge. When reviewing an insufficient evidence claim, "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

> The essential elements of conspiracy are that the conspiracy was wilfully formed and that the defendant wilfully became a member of the conspiracy. An overt act need not be proven in a § 846 conspiracy. For conviction, [the defendant] must have been shown to have agreed to participate in what he knew to be a joint venture to achieve a common goal. However, actual agreement need not be proved.

*United States v. Bourjaily,* 781 F.2d 539, 544 (6th Cir.1986) (citations omitted). Further, once a conspiracy has been established, evidence connecting a particular defendant to the conspiracy "need only be slight" (*United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997)) and "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every hypothesis except that of guilt." *United States v. Peter*, 15 F.3d 540, 544 (6th Cir. 1994) (internal quotation marks and citations omitted).

Turning to the case at bar, we first note that at the close of the government's case, Pomales requested an acquittal under Fed. R. Crim. P. 29, and his request was denied. We are more hesitant to disturb a jury's verdict where the district court has rejected a Rule 29 motion. *United States v. Lee*, 359 F.3d 412, 418-19 (6th Cir. 1999). Pomales' main argument is that witness Allman was a government informant and that "proof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction" *United States v. Pennel*, 737 F.2d 521, 536

15

(6th Cir. 1984). By focusing on Allman's status and testimony, Pomales ignores the large number of other co-conspirators who testified that he was part of a multi-person conspiracy involving the sale and purchase of crack cocaine from 2000-2003 including: Paul Sinatra, Mark and Paul Stazzone, Tim Kaim, Mike Morris, Anthony Kaim, Rick Sanders, Lance Hartman, and even some testimony from Allman regarding events prior to his becoming a government informant. In light of the district court's denial of Pomales' Rule 29 motion and the testimony, we hold a reasonable juror could have found Pomales guilty of conspiracy.

Pomales also argues that the evidence presented at trial was materially different from the conspiracy alleged in the indictment thus resulting in a constructive amendment or variance in violation of his Fifth Amendment rights. Pomales did not present this argument to the trial court and so the plain error standard applies. Thus, to succeed on this claim Pomales must show there was "(1) error, (2) that is plain, and (3) that affected substantial rights." *Olano*, 507 U.S. at 732.

The indictment charged Pomales with conspiring with a number of named and unnamed coconspirators,[3] many of whom testified at trial. Comparing the trial testimony to the language in

---

[3] The indictment stated, in relevant part:

E. It was further part of the conspiracy that Randall Allman would purchase quantities of cocaine from Normal Pomales...an other Cleveland-based dealers when...Cornell...and...Pavlovic were unavailable.
F. It was further part of the conspiracy that Randall Allman or his associates would sell or "front" quantities of cocaine and/or cocaine base ("crack") to other mid-level dealers including : Norman Pomales...
H. It was further part of the conspiracy that Norman Pomales,...Paul Sinatra,...Jeffrey Williams,...Lance Hartman, Jason Hager, aka Polar Bear,...Ricky Sanders Jr., Anthony Kiam, and others would at times supply each other with amounts of cocaine and/or cocaine base ("crack") depending upon the available supply and/or act together in small groups to purchase larger amounts of cocaine and/or cocaine base ("crack") from local area dealers.

the indictment, we see no variance that affected his substantial rights, as required under the plain error standard.

III.

Pomales argues that the district court erred by not instructing the jury that the government must prove an agreement between Pomales and someone other than a government informant. We normally review jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury. *United States v. Brown*, 367 F.3d 549, 555 (6th Cir. 2004), but because Pomales failed to object to an error in the district court, we review for plain error. *Cromer*, 389 F.3d at 672.

In *United States v. Hayden*, we stated that "[t]he rule that government agents do not count as coconspirators . . . is limited to situations in which the conspiracy involves *only* one defendant and a government informer." 68 Fed. App 530, 532 (6th Cir. 2003)(unpublished opinion)(citation omitted). "When there are at least two 'true' coconspirators, the involvement of a government agent or informant does not defeat the true conspirators' culpability." *United States v. Nelson-Rodriguez*, 319 F.3d 12, 39 (1st Cir. 2003) (citation omitted).

Numerous people - including Sinatra, Williams, Anthony, Kaim, Morris, Hartman, Sanders, and brothers, Mark and Paul Stazzone - testified that Pomales supplied them with crack/cocaine and that they had knowledge of each other. Further, we note that Allman, a government informant, testified that he purchased cocaine from and sold cocaine to Pomales before he agreed to cooperate with the government. Thus, he first conspired with Allman before he became a government informant. As Pomales conspired with at least 10 others and as he conspired with Allman prior to his becoming a government informant, we hold the district court did not plainly err by not

17

instructing the jury that the government must prove an agreement between Pomales and someone other than a government informant.

IV.

Pomales argues the district court violated his Sixth Amendment right to a trial by an impartial jury by not granting the government's motion to remove Juror #8 for cause after learning that he knew government witness Benny Ingram.[4] We will not reverse a district court's decision whether to strike a prospective juror for cause "absent a manifest abuse of discretion." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994) (citation omitted). "A trial court's determination of a juror's credibility is entitled to 'special deference. . .' [and] is entitled to a presumption of correctness, rebuttable only upon a showing of clear and convincing evidence". *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003).

When a juror's impartiality is at issue, the relevant question is "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Id.* (citing *Patton v. Yount,* 467 U.S. 1025, 1036, 104 S.Ct. 2885 (1984)). Yet, "[o]nly where a juror has indicated a refusal to consider the testimony and displayed evidence of a closed mind concerning a defendant's innocence can we say that the district court has abused its discretion in refusing to strike a juror for cause." *United States v. Smith*, 748 F.2d 1091, 1095 (6th Cir. 1984)

---

[4]We note that there has been disagreement about whether Pomales' counsel objected to Juror #8 remaining on the jury.

Pomales argues Juror #8 was biased as he and government witness Benny Ingram grew up in the same neighborhood and were acquaintances. Pomales argues that Juror #8 stated on "numerous occasions" that he could not be impartial. However, we agree with the government that the record clarifies that Juror #8 misunderstood the complex questions and, once the judge clarified the question, he indicated that his relationship with Ingram "wouldn't have no effect on me, I don't think"[5] (J.A. at 298) and that he could be fair by only considering evidence presented at trial.

There is no evidence that Juror #8 was biased against Pomales as Ingram only testified against Cornell and never mentioned Pomales. Further, we find that Juror #8 did not display evidence of a closed mind concerning Pomales. We find the district court did not err in declining to remove Juror #8.

V.

Pomales contends that the district court made independent factual findings to enhance his sentence in violation of *Booker*. In making this argument, Pomales points to three factual findings made by the district court: 1) a finding of the amount of drugs Pomales conspired to possess and/or distribute, 2) a finding that Pomales obstructed justice, and 3) a finding that Pomales committed the instant offenses while on probation. In *Booker*, the Court held that the Sentencing Guidelines must be construed as advisory, rather than mandatory and that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" or else the Sixth Amendment is violated. *Booker,*125 S.Ct. at 748. In *United*

---

[5]We note that "venire members commonly couch their responses to questions concerning bias in terms of "I think." Therefore, the use of such language cannot necessarily be construed as equivocation." *Miller v. Francis*, 269 F.3d 609, 618 (6th Cir. 2001).

*States v. Oliver* we held that independent factual-findings which increase a defendant's sentence violated the Sixth Amendment. 397 F.3d 369 (6th Cir. 2005).

We agree that the judge found facts in violation of *Booker* and thus, we vacate Pomales' sentence and remand this case under our decision in *Oliver* for re-sentencing.

VI.

Pomales argues that the district court committed error by ordering that he forfeit $63,087.97, pursuant to 21 U.S.C.A. § 853. Pomales argues the nexus between his drug violations and the forfeited funds is insufficient.

During the trial, evidence was presented to the court that in October 2001, Pomales' grandfather purchased a house for $40,000. In 2002, Pomales hired the Stazzone brothers to make repairs to the house in exchange for crack/cocaine. Pomales was not employed at the time the Stazzones made improvements to the house and he can show no source for the money to pay the Stazzones apart from drug transactions. In March 2003, Pomales' grandfather transferred the house to Pomales by quitclaim deed. Five months later, Pomales sold the house for $127,000. After deductions, he received $103,087.97.

The government has the burden of demonstrating, by a preponderance of the evidence, that the defendant obtained the property as a result of the drug violation. *United States v. Layne*, 192 F.3d 556, 574-75 (6th Cir. 1999). The court found that the government failed to meet the burden of establishing that Pomales used drug money to purchase the house, and so it did not order that he forfeit the original purchase price of $40,000. However, the court did find that the government did establish that the improvements to the house were a result of drug violations and ordered that he forfeit $63,087.97, or, the amount the house appreciated by reason of the improvements. Pomales

20

has yet to provide any evidence to the contrary. We find the district court correctly concluded that Pomales derived an added value in the house as a result of his drug violations.

## CONCLUSION

For the foregoing reasons we AFFIRM Stanley Cornell's conviction and sentence. We AFFIRM Norman Pomales' conviction, but VACATE his sentence and REMAND his case for resentencing.